NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MICHAEL SABO, NICHOLAS WELLS, JUAN PEREZ, ALAN PITTS, BILLY J. TALLEY, AIMEE SHERROD, TYLER EINARSON, ON BEHALF OF THEMSELVES AND ALL OTHER INDIVIDUALS SIMILARLY SITUATED,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2016-2693

---

Appeal from the United States Court of Federal Claims in No. 1:08-cv-00899-MMS, Judge Margaret M. Sweeney.

---

Decided: December 15, 2017

---

ARNOLD BRADLEY FAGG, Morgan, Lewis & Bockius LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by CHARLES P. GROPPE; BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

ALEXANDER ORLANDO CANIZARES, Commercial Litiga-
tion Branch, Civil Division, United States Department of
Justice, Washington, DC, argued for defendant-appellant.
Also represented by CHAD A. READLER, ROBERT E.
KIRSCHMAN, JR., DOUGLAS K. MICKLE, SHARI A. ROSE.

_____

Before MOORE, CHEN, and STOLL, *Circuit Judges.*

MOORE, *Circuit Judge*.

The government appeals from the Court of Federal
Claims' ("Claims Court") judgment and order awarding
$3,862,924.53 to a certified class of plaintiffs ("Plaintiffs")
for attorneys' fees and expenses pursuant to the Equal
Access to Justice Act ("EAJA"). For the reasons discussed
below, we *affirm*.

## BACKGROUND

When a disability renders a military service member
unfit to perform his duties, he may be retired—either
permanently or temporarily (by being placed on the
temporary disability retirement list)—or separated. 10
U.S.C. §§ 1201–03. A service member can be retired upon
a determination that, among other requirements, his
disability is at least 30 percent, or separated upon a
determination that his disability is less than 30 percent,
"under the standard schedule of rating disabilities in use
by the Department of Veterans Affairs at the time of the
determination." *Id.* §§ 1201(b), 1203(b). The Secretaries
of the military service branches are authorized to pre-
scribe regulations to determine "the percentage of disabil-
ity of any such member at the time of his separation
from active duty." *Id.* § 1216(b)(2).

In 2008, Congress enacted the National Defense
Authorization Act for Fiscal Year 2008 ("NDAA"). Pub. L.
No. 110-181, 122 Stat. 3. As part of the NDAA, Congress
created a new statutory section directing that the service

branches "shall, to the extent feasible, utilize the schedule for rating disabilities in use by the Department of Veterans Affairs" and "may not deviate from the schedule" unless it would result in a greater percentage of disability. *Id.* § 1642 (codified at 10 U.S.C. § 1216a).

The Department of Veterans Affairs' ("VA") Schedule for Rating Disabilities ("VASRD") contains provisions relating to post-traumatic stress disorder ("PTSD"). Specifically, VASRD § 4.129 provides:

> When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

38 C.F.R. § 4.129. VASRD § 4.130 sets forth a schedule for rating mental disorders, including PTSD. *Id.* § 4.130.

Prior to the enactment of NDAA, Department of Defense Instruction ("DoDI") 1332.39 generally adopted the VASRD as the standard for assignment of disability ratings, but stated "not all the general policy provisions in Sections 4.1 – 4.31 of the VASRD are applicable." DoDI 1332.39, *Application of the Veterans Administration Schedule for Rating Disabilities* ¶ 4.2 (Nov. 14, 1996). It specifically declined to adopt the VA's convalescent ratings, which permit assignment of total disability ratings for specified periods of time without regard to actual impairment of function. *Id.* ¶ 6.7; *see* 38 C.F.R. §§ 4.30, 4.128. The Army also issued policy memoranda in 2002 and 2005 declaring that the 50 percent rating in VASRD § 4.129 was a convalescent rating that it would not use when assigning disability ratings to soldiers deemed unfit for duty due to PTSD. Shortly after passage of the NDAA,

the Department of Defense ("DoD") rescinded DoDI 1332.39 and directed the service branches to prospectively apply VASRD § 4.129 to service members deemed unfit for duty due to PTSD.

Plaintiffs are service members who served in Iraq and Afghanistan, were diagnosed with PTSD, and were medically separated as a result. All received disability ratings of less than 50 percent for PTSD, in accordance with DoD policy prior to the enactment of NDAA. On December 17, 2008, Plaintiffs sued, alleging the DoD wrongfully disregarded VASRD § 4.129 and chapter 61 of Title 10 in rating their disabilities. On July 15, 2011, the parties filed a settlement agreement ("Agreement"), which the Claims Court approved on December 22, 2011.

The terms of the Agreement involved various actions by the Plaintiffs, the government, and the Claims Court, but the Agreement generally provided the service branches would change Plaintiffs' records to reflect a 50 percent disability rating for PTSD. It further provided:

> [T]he Court will maintain jurisdiction of the claims . . . until the parties submit to the Court a joint status report that lists (in filings made under seal) the names of those plaintiffs whose military records have been changed pursuant to the agreed upon terms above, and as set forth in the Exhibits to this agreement. By submitting the list of names to the court under cover of these joint status reports, the parties further agree that these plaintiffs' claims can be dismissed from the case with prejudice, consistent with paragraph 2 of this agreement, and with a provision incorporating the terms of this Settlement Agreement in the order of dismissal.

J.A. 831–32 ¶ 20. The Agreement further provided:

> Nothing in th[e] Settlement Agreement shall preclude Plaintiffs from making an application for fees or other applicable relief under [EAJA] nor from receiving an award pursuant to EAJA, and the government does not waive any defenses to any such EAJA application nor concede or admit any entitlement under EAJA[.]

J.A. 825 ¶ 2.

Plaintiffs filed an initial application for fees and costs under EAJA on October 10, 2012. The government moved to dismiss the application because, under 28 U.S.C. § 2412(d)(1)(B), Plaintiffs' EAJA application was untimely filed more than thirty days after the day the Claims Court approved the Agreement. The Claims Court denied the motion because "[i]ssues of implementation of the Settlement Agreement remain[ed] to be decided by the Court," and treating the Agreement as a final judgment would "conflict with the general rule that dismissal of all claims is a prerequisite for a final judgment" and "frustrate the purpose of the EAJA." J.A. 5–6.

On July 26, 2016, the Claims Court awarded Plaintiffs the entirety of their requested attorneys' fees and expenses pursuant to EAJA. It held that the government's position was not substantially justified, in part, because VASRD § 4.129 is not a convalescent rating and was applicable prior to enactment of the NDAA. On October 13, 2016, the Claims Court dismissed the last remaining claim with prejudice. On November 7, 2016, the Claims Court issued a judgment pursuant to Rule 58 "that all claims in this matter are dismissed, with prejudice." J.A. 3009. The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

The government puts forth two arguments contesting the Claims Court's award under EAJA. First, it argues

the Claims Court's December 2011 approval of the Agreement constituted a final judgment pursuant to § 2412(d)(2)(G). We do not agree.

"A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court" its EAJA application. 28 U.S.C. § 2412(d)(1)(B). "Final judgment" means "a judgment that is final and not appealable, and includes an order of settlement." *Id.* § 2412(d)(2)(G). Of course, a court's adoption of a settlement agreement can constitute a final judgment for the purposes of EAJA. The statutory language of EAJA expressly anticipates that "an order of settlement" can constitute a final judgment. 28 U.S.C. § 2412(d)(2)(G). And we have previously taken no issue with a final judgment that stemmed from the parties' settlement agreement and stipulation for entry of judgment. *See, e.g., Levernier Const., Inc. v. United States*, 947 F.2d 497, 498 (Fed. Cir. 1991) (reviewing EAJA award filed after the parties implemented a settlement agreement and the court entered judgment for the agreed amount). If the parties had agreed to dismiss the entire class of claims together as part of a global settlement, the court's approval of the settlement agreement might have been reasonably construed as a "final judgment" for the purposes of § 2412.

However, the fact that a court approved and adopted a settlement agreement does not *always* mean that the order is a "final judgment" under § 2412. A final judgment must be one "that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The statute contemplates the filing of an EAJA application only after the case is entirely at an end (final), including appealability. *See Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991) (explaining that the 30-day clock begins to run after the time to appeal the court's judgment has expired). The final judgment rule precludes appeals until the trial court "ends the litigation on the merits and leaves nothing for the court to do but

execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Whether a particular settlement agreement satisfies this finality requirement is determined according to the terms of the settlement agreement. And even in a settled case, "the trial court must dismiss, with or without prejudice, all of the claims as a predicate to a final judgment before appellate jurisdiction may lie." *Silicon Image, Inc. v. Genesis Microchip Inc.*, 395 F.3d 1358, 1363 (Fed. Cir. 2005).

The Agreement in this case was not contemplated by the parties to constitute a final judgment of all claims. The first sentence under the section titled "General Settlement Framework" states that "[w]ithin six months of the date on which the Court approves this Settlement Agreement, defendant shall take all steps necessary to execute" a series of actions including changing military records of individual plaintiffs and transmitting a copy of the changed record to the class member and Plaintiffs' counsel. J.A. 826–27 ¶ 6. The Agreement expressly contemplated "that the [Claims] Court will maintain jurisdiction of the claims" until the parties jointly submitted lists of individual plaintiffs whose military records had been changed in accordance with the Agreement. J.A. 831–32 ¶ 20. Only upon submission of these joint status reports did the parties "agree that these plaintiffs' claims can be dismissed from the case with prejudice." *Id.* The parties did not authorize the dismissal of any claims unless and until the joint status reports were submitted. The parties also anticipated that the Agreement would be executed in batches: the first joint status report would "be filed within 60 days of the court's final approval" of the Agreement, with subsequent reports "filed on an ongoing basis as additional plaintiff's [sic] military records are changed, but at a minimum, every 90 days thereafter." *Id.* This evidences the parties' intent that this class action suit would not be final unless and until joint status

reports were submitted and approved for all individual plaintiffs in the class.

The Agreement in this case did not become "final" for the purposes of EAJA until October 13, 2016, when the Claims Court dismissed the last claim with prejudice. The Agreement reflects the parties' contemplation that there existed conditions precedent to the dismissal of the claims similar to those in *Silicon Image*. 395 F.3d at 1363. Plaintiffs' EAJA application was timely filed.[1]

Second, the government argues its positions both before and during litigation were substantially justified. We hold that the Claims Court did not abuse its discretion in finding that the government's positions were not substantially justified.

A court shall award to a prevailing party other than the United States fees and expenses incurred in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of establishing its position was substantially justified, and its position includes actions both before and during litigation. *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011). A position is substantially justified if a reasonable person could think it correct. *Id.* We review the Claims Court's EAJA award, including the determination that the government's position was not substantially justified, for abuse of discretion. *Libas, Ltd. v. United States*, 314 F.3d 1362, 1364–65 (Fed. Cir. 2003).

In a thorough and well-reasoned opinion, the Claims Court clearly addressed each of the government's arguments and explained why the government's positions,

---

[1]    The parties did not dispute that Plaintiffs may file an EAJA application before a final judgment.

both before and during litigation, were not substantially justified. It explained that the plain language of 10 U.S.C. §§ 1201–03, applicable before enactment of the NDAA, required the service branches to use "the standard schedule of rating disabilities in use by the [VA] at the time of the determination" without qualification that some sections of the VASRD should be used but not others. It reasoned that the DoD's characterization of VASRD § 4.129 as a convalescent rating was contrary to the description of convalescent ratings in VASRD §§ 4.30 and 4.128 as a 100 percent total disability rating when treatment for a disability resulted in hospitalization or immobilization. 38 C.F.R. §§ 4.30, 4.128. And while the Claims Court recognized that the government's decision to pursue a settlement with Plaintiffs was substantially justified, it evaluated the government's actions after approval of the Agreement and concluded that it failed to meet its burden of establishing that the actions it took to expeditiously process Plaintiffs' claims were substantially justified. Under these circumstances, we cannot say the Claims Court abused its discretion in concluding that, overall, the government's positions were not substantially justified.

CONCLUSION

For the foregoing reasons, we *affirm* the Claims Court's judgment awarding fees and expenses under EAJA.

**AFFIRMED**