# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2174

KEVIN R. GEORGE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided January 4, 2019)

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Richard A. Daley*, Deputy Chief Counsel; and *Mark D. Gore*, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and BARTLEY and MEREDITH, *Judges*.

Davis, *Chief Judge*, filed the opinion of the Court. BARTLEY, *Judge*, filed a dissenting opinion.

DAVIS, *Chief Judge*: U.S. Marine Corps veteran Kevin R. George appeals through counsel a March 1, 2016, Board of Veterans' Appeals (Board) decision that found no clear and unmistakable error (CUE) in a September 1977 Board decision that denied entitlement to VA disability compensation benefits for schizophrenia. Record (R.) at 2-14. On September 6, 2017, the Court issued a memorandum decision affirming the Board's decision. On September 19, 2017, Mr. George filed a motion for reconsideration. On October 27, 2017, the matter was referred to a panel of the Court. On November 15, 2017, the panel granted Mr. George's motion for reconsideration, withdrew the September 2017 memorandum decision, ordered the Secretary to respond to Mr. George's motion for reconsideration, and permitted Mr. George to reply to the Secretary's response. After considering the briefs, the motion for reconsideration, the Secretary's response to the motion, and Mr. George's reply, the Court will affirm the Board's March 2016 decision.

# I. BACKGROUND

In June 1975, Mr. George enlisted in the U.S. Marine Corps. A week after enlistment, he was hospitalized and diagnosed with an acute situational reaction. R. at 6; *see* R. at 1172, 1289. In July 1975, Mr. George was discharged from the hospital and ultimately placed in a training platoon. The following month, a psychiatrist diagnosed Mr. George with paranoid schizophrenia. An August 1975 Medical Board Report confirmed the schizophrenia diagnosis, found that his condition preexisted service and *was aggravated* by service, and recommended referral to the Central Physical Evaluation Board for discharge. In contrast, the Physical Evaluation Board found that his condition preexisted service but *was not aggravated* by service. Mr. George was discharged from service in September 1975.

In December 1975, Mr. George filed a claim for benefits contending that his schizophrenia was aggravated by his military service. A May 1976 regional office (RO) decision denied his claim because his condition existed prior to service and there was an acute exacerbation but no permanent aggravation during service. In September 1977, the Board denied Mr. George's claim because his condition existed prior to service and was not aggravated during service.

In December 2014, through current counsel, Mr. George filed a motion to revise the September 1977 Board decision on the basis of CUE. Mr. George alleged that the Board failed to correctly apply 38 U.S.C. § 311,[1] as VA did not rebut the presumption of sound condition with clear and unmistakable evidence that his condition was not aggravated by service. R. at 593.

In the March 2016 decision on appeal, the Board found no CUE in the September 1977 Board decision. The 2016 Board noted that the September 1977 Board "in conducting its presumption of soundness analysis under 3.304(b) (1977) . . . was not required to find clear and unmistakable evidence that the disability was not aggravated by service." R. at 5. The Board further acknowledged that the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that section 1111, the presumption of soundness statute, requires clear and unmistakable evidence that a condition *both* existed prior to service *and* was not aggravated during service, *see Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004), but stated that "judicial decisions that formulate new interpretations of the law subsequent to a VA decision cannot be the basis of a valid CUE claim." R. at 6. Relying on *Jordan v. Nicholson*, 401 F.3d 1296 (Fed. Cir. 2005), the Board explained that

---

[1] The presumption of soundness is now codified as 38 U.S.C. § 1111, but the statutory language is identical to the precursor statute, section 311.

the interpretation of the presumption of sound condition that the Federal Circuit "articulated in *Wagner*[] does not have retroactive application in a CUE case. Thus, the failure of the Board [in September 1977] to find that the [claimant's] condition was not clearly and unmistakably aggravated by service as part of its presumption of soundness analysis cannot be considered to be CUE." *Id*.

In its 2016 decision, the Board discussed the evidence before the Board in September 1977 and concluded that there was evidence that Mr. George's schizophrenia existed prior to service, and conflicting evidence as to whether his condition was aggravated by service. The Board noted that the Medical Board had concluded that Mr. George's condition had its onset prior to service and that his disability was aggravated by service. R. at 8. In contrast, the Board pointed to the August 1975 "Physical Evaluation Board Proceedings and Findings" form stating that Mr. George's condition preexisted service and was not aggravated by service.

The 2016 Board conceded that the September 1977 Board did not discuss the presumption of soundness statute, 38 U.S.C. § 311 (1977), discuss its implementing regulation, 38 C.F.R. § 3.304(b) (1977), or explain how there was clear and unmistakable evidence that Mr. George's condition existed prior to service and was not aggravated by service. R. at 10. The 2016 Board stated, however, that even though the September 1977 Board erred, the error was not outcome determinative "because the Board nonetheless considered all relevant evidence of record at the time of its September 1977 decision." R. at 11. The 2016 Board concluded that Mr. George's allegation of CUE in the September 1977 decision is simply a disagreement with how the Board in 1977 weighed the evidence, which does not constitute CUE.

## II. PARTIES' ARGUMENTS

On appeal, Mr. George argues that the Board in March 2016 erred in finding that, under 38 C.F.R. § 3.304(b) (1977), the Board in September 1977 "was not required to find clear and unmistakable evidence that the disability was not aggravated by service." R. at 5. He contends that his CUE motion specifically challenged the application of section 311, a *statute*, and not the VA *regulation* in effect in 1977. Mr. George further points out that when a court interprets a statute, its interpretation is a statement of what the law has always been, which he argues renders the Board's dismissal of *Wagner* improper. *See* Appellant's Brief (Br.) at 5. He asserts that the 2016 Board's reliance on *Jordan* is misplaced because that case does not address "whether the court's

interpretation of the statutory presumption of soundness had a retroactive effect on requests for revisions based on an allegation of [CUE] due to the Board's failure to correct[ly] apply the statute, notwithstanding what the VA's regulatory interpretation of the statute may have been." *Id.* at 6. In support of this argument, Mr. George relies on the Federal Circuit's decision in *Patrick v. Shinseki*, 668 F.3d 1325 (Fed. Cir. 2011).

The Secretary agrees that the 2016 Board erred in stating that the 1977 Board, "in conducting its presumption of soundness analysis under 3.304(b) (1977)[,] . . . was not required to find clear and unmistakable evidence that the disability was not aggravated by service." R. at 5. Further, the Secretary recognizes that the 2016 Board also erred in relying on *Jordan*, 401 F.3d at 1288-89. The Secretary explains that *Jordan* speaks only to an allegation of CUE based on a retroactive effect of a regulation's invalidity and the issue here is an allegation of CUE based on the Board's failure to properly apply the statute.

Despite the Board's error, the Secretary contends that it is evident from the decision that the 2016 Board conducted the proper analysis, because it recognized that the Board in 1977 was "bound by the requirement that there be clear and unmistakable evidence on the aggravation prong of the analysis." Secretary's Br. at 8. The Secretary argues for the affirmance of the March 2016 Board decision because Mr. George did not demonstrate that the Board's error in articulating an incorrect evidentiary standard in 1977 would have resulted in a manifestly changed outcome. The Secretary asserts that the 2016 Board explained that there was evidence before the Board in 1977 rebutting both prongs of the presumption of soundness, that is, evidence that Mr. George had a preexisting condition and that his condition was not aggravated by service. *See* Secretary's Br. at 10 (citing R. at 1282-84, 1289, 1294). Accordingly, the Secretary contends that the 2016 Board properly found no CUE in the 1977 Board decision.

### III. ANALYSIS

Mr. George argues that there was CUE in the September 1977 Board decision because the Board misapplied the statutory presumption of soundness. He asserts that, had the presumption of soundness been correctly applied, VA would have been required to show by clear and unmistakable evidence that his condition existed prior to service and was not aggravated by service. Before addressing Mr. George's arguments, the Court will briefly discuss the statutory presumption of soundness, the statute and regulation providing for revision of Board decisions on

4

the basis of CUE, and the Federal Circuit's decisions in *Wagner*, *Jordan*, and *Patrick*, which provide the context to Mr. George's arguments.

## A. Presumption of Soundness

The presumption of soundness statute, in 1977, as today, stated:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 311 (1977) (now 38 U.S.C. § 1111). Because of *Wagner*, we now know that the presumption may be rebutted only with clear and unmistakable evidence of *both* preexistence and no aggravation. 370 F.3d at 1096. In 1977, however, the implementing regulation for this statute required the Secretary to rebut the presumption of soundness only with "clear and unmistakable (obvious or manifest) evidence [that] demonstrates that an injury or disease existed prior [to service]." 38 C.F.R. § 3.304(b) (1977). In 2003, VA invalidated this version of the regulation. *See* VA Gen. Coun. Prec. 3-2003 (July 16, 2003). The regulation was amended, effective May 4, 2005, to incorporate the new interpretation requiring evidence of both preexistence and no aggravation. *See* 70 Fed. Reg. 23,027-01, 23,028 (May 4, 2005).

## B. CUE: An Exception to Finality

Congress has enacted a statute allowing Board decisions to be challenged on the basis of CUE. *See* 38 U.S.C. § 7111. "CUE proceedings are fundamentally different from direct appeals," in that they are a limited statutory exception to the rule of finality. *Robinson v. Shinseki*, 557 F.3d 1355, 1360 (Fed. Cir. 2009); *see Disabled Am. Veterans v. Gober* (*DAV*), 234 F.3d 682, 686-87 (Fed. Cir. 2000). CUE is a rare kind of error and allows final RO and Board decisions to be reversed or revised. 38 U.S.C. §§ 5109A, 7111; *see DiCarlo v. Nicholson*, 20 Vet.App. 52, 54-58 (2006); 38 C.F.R. §§ 3.105, 20.1400-11 (2018).

To establish CUE, a claimant must show that either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, and an error occurred based on the record and the law that existed at the time the decision was made. *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). The error must also have "manifestly changed the outcome" of the decision. *Id.*; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999). The Court's review of a Board decision finding no CUE in a prior final Board decision is limited to

5

determining whether the Board's finding was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *Russell*, 3 Vet.App. at 315.

VA's implementing regulation for section 7111, 38 C.F.R. § 20.1403(e), states that CUE "does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation." The Federal Circuit affirmed VA's rulemaking authority and upheld § 20.1403(e) in *DAV*, 234 F.3d at 698 ("The new interpretation of a statute can only retroactively [a]ffect decisions still open on direct review, not those decisions that are final.").

C. *Wagner*, *Jordan*, and the Presumption of Soundness

After *DAV*, the Federal Circuit addressed § 3.304(b), section 1111's implementing regulation, in *Wagner*. In that case, the appellant appealed this Court's affirmance of a Board decision that determined that the presumption of soundness had been rebutted because the Secretary established with clear and unmistakable evidence that the appellant's injury preexisted service. This Court's decision was based on § 3.304(b), which allowed the presumption of soundness to be "rebutted solely by 'clear and unmistakable evidence that an injury or disease existed prior to service.'" *Wagner*, 370 F.3d at 1091 (quoting 38 C.F.R. § 3.304(b) (1999)). After the appellant filed his appeal to the Federal Circuit, VA's general counsel issued a precedential opinion stating that, to rebut the presumption of soundness, the Secretary must show with clear and unmistakable evidence that a claimant's disability preexisted service *and* was not aggravated by service. *See* VA Gen. Coun. Prec. 3-2003 (July 16, 2003). After examining the legislative history and the language of section 1111, the Federal Circuit agreed, holding that the Government must show both preexistence and no aggravation to rebut the presumption of soundness, consistent with the VA General Counsel's opinion. *Wagner*, 370 F.3d at 1096.

Following its decision in *Wagner*, the Federal Circuit turned to whether its invalidation of § 3.304(b) had retroactive effect. In *Jordan*, the appellant had appealed a 1999 Board decision finding no CUE in a 1983 decision that, in turn, found the presumption of soundness had been rebutted pursuant to § 3.304(b). The appellant contended that the invalidation of § 3.304(b) in *Wagner* should apply retroactively such that the regulation was, in effect, not in existence at the time of the 1999 Board decision, thereby requiring the Board to consider whether *both* prongs of the presumption had been rebutted in 1983. The Federal Circuit rejected Mr. Jordan's argument that "invalidation of [the] regulation can retroactively affect final decisions." *Jordan*, 401 F.3d at

6

1297. Instead, the Federal Circuit applied the rule announced in *DAV*, holding that "CUE does not arise from a new regulatory interpretation of a statute" and that, "because the 1983 Board decision was final, Mr. Jordan has no recourse for appeal through a CUE [motion]." *Id*. at 1299.

D.  The *Patrick* Line of Cases[2]

One month after issuing *Wagner*, the Federal Circuit issued *Patrick I*, a nonprecedential decision, which began the *Patrick* line of cases. The Court will discuss this line of cases for context, because Mr. George relies heavily on the Federal Circuit's decision in *Patrick VI*, a decision on attorney fees, as well as the Federal Circuit's nonprecedential decisions on the merits that preceded it. *See* Motion for Reconsideration at 5-10. In the *Patrick* cases, a veteran's widow argued that the Board erred in finding no CUE in a March 1986 Board decision because section 1111 requires clear and unmistakable evidence both that an injury or disease preexisted service and that any such injury or disease was not aggravated by service. *See Patrick I*, 103 F. App'x at 384.  This Court affirmed the Board decision and the appellant appealed to the Federal Circuit.

In *Patrick I*, a nonprecedential decision, the Federal Circuit noted its then-recent decision in *Wagner* and remanded the matter for "further consideration" by this Court in light of that precedent. *Id*. at 385. The Federal Circuit also noted that Mrs. Patrick did not challenge the Board's finding that the Secretary had rebutted the preexistence prong but rather argued that the Secretary had not shown by clear and unmistakable evidence that there was no aggravation during service. *Id*. On remand, this Court again affirmed the Board decision, finding that the Federal Circuit, in its intervening decision in *Jordan*, had held "that the presumption-of-soundness interpretation articulated in *Wagner* . . . does not have retroactive application in a CUE case." *Patrick II*, 2006

---

[2] The *Patrick* line of cases, including precedential and nonprecedential decisions from both this Court and the Federal Circuit, is as follows: *Patrick v. Principi* (*Patrick I*), 103 F. App'x 383 (2004) (nonprecedential Federal Circuit decision remanding the case for this Court to consider *Wagner*); *Patrick v. Nicholson* (*Patrick II*), No. 99-916, 2006 WL 318822 (Vet. App. Feb. 1, 2006) (single-judge decision of this Court affirming the 1999 Board decision finding no CUE in the March 1986 Board decision); *Patrick v. Nicholson* (*Patrick III*), 242 F. App'x 695 (Fed. Cir. 2007) (nonprecedential Federal Circuit decision vacating this Court's affirmance of the 1999 Board decision); *Patrick v. Peake* (*Patrick IV*), No. 99-916, 2008 WL 331094 (Vet. App. Jan. 31, 2008) (single-judge decision of this Court remanding the case for the Board to provide an adequate statement of reasons or bases for its conclusion that Mr. Patrick's preexisting heart disorder did not permanently increase during service); *Patrick v. Shinseki* (*Patrick V*), 23 Vet.App. 512 (2010) (panel decision of this Court denying Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), fees to Mrs. Patrick because it found that the Government's position was substantially justified); *Patrick v. Shinseki* (*Patrick VI*), 668 F.3d 1325 (Fed. Cir. 2011) (Federal Circuit's precedential reversal of the denial of EAJA fees to Mrs. Patrick for failure to adequately address the totality of the circumstances); *Patrick v. Shinseki* (*Patrick VII*), No. 08-10899(E), 2012 WL 1860869 (Vet. App. May 23, 2012) (single-judge decision following the Federal Circuit's guidance and finding the Secretary's position was not substantially justified).

WL 318822, at *9 (citing *Jordan*, 401 F.3d at 1298-99). The appellant again appealed to the Federal Circuit.

In *Patrick III*, another nonprecedential decision, the Federal Circuit stated that this Court had "misread[]" *Jordan*, which had "addressed whether a change in the regulatory interpretation of a statute had retroactive effect on CUE [motions], not whether [its] interpretation of the statute in *Wagner* had retroactive effect on CUE [motions]." 242 F. App'x at 697. The Federal Circuit further stated that its holding in *Jordan* was "limited" and explained that, "[u]nlike changes in regulations and statutes, which are prospective, [its] interpretation of a statute is retrospective in that it explains what the statute has meant since the date of enactment." *Id.* at 698 (citing *Rivers v. Roadway Express*, 511 U.S. 298, 312-13 (1994)). More specifically, the Federal Circuit stated that its "interpretation of [section] 1111 in *Wagner* did not change the law but explained what [section] 1111 has always meant." *Id.* (emphasis omitted). The Federal Circuit expressly directed this Court on remand to consider Mrs. Patrick's CUE motion and if necessary "remand to the Board for a determination of whether the government has rebutted the presumption of soundness under [section] 1111 by providing clear and unmistakable evidence of no in-service aggravation of Mr. Patrick's heart disease." *Patrick III*, 242 F. App'x at 698. On remand, in *Patrick IV*, this Court vacated the Board decision and remanded the appellant's appeal, and she filed an application for attorney fees under EAJA. In *Patrick V*, this Court denied the application, finding that the Secretary's position was substantially justified; Mrs. Patrick again appealed to the Federal Circuit.

In the "Background" section of *Patrick VI*, the first and only precedential decision in this line of cases, the Federal Circuit summarized what it said in *Patrick III* about the limitations of *Jordan* and the effect of its pronouncement regarding section 1111 in *Wagner*. 668 F.3d at 1328-29. In the "Discussion" section of *Patrick VI*, the Federal Circuit addressed whether EAJA fees were warranted, reversed this Court's finding that the Secretary's position was substantially justified, and remanded the matter for this Court to consider substantial justification using the totality of circumstances test.[3] *Id.* at 1334. The Federal Circuit included the following footnote:

> Nor did the Veterans Court [in *Patrick V*] fully assess the question of whether the government was substantially justified in arguing, following our decisions in *Wagner*, 370 F.3d at 1094-96, and *Patrick I*, 103 F[.] App[']x[] at 384-85, that this court's interpretation of section 1111 did not apply retroactively in the context of a CUE claim. We soundly rejected this argument in *Patrick III*, where we explained

---

[3] This Court ultimately granted Mrs. Patrick's EAJA application in *Patrick VII*.

that[,] "[u]nlike changes in regulations and statutes, which are prospective, our interpretation of a statute is retrospective in that it explains what the statute has meant since the date of enactment." 242 F[.] App[']x[] at 698. We emphasized, moreover, that "our interpretation of § 1111 . . . did not *change* the law but explained what [section] 1111 has always meant," and should therefore be applied to Mrs. Patrick's claim alleging CUE in the [B]oard's previous decision denying her application for dependency and indemnity benefits. *Id.*

*Patrick VI*, 668 F.3d at 1333 n.6.

### E. Retroactivity and CUE

This appeal involves the competing doctrines of finality and retroactivity. In civil cases, the need for finality limits the application of retroactivity. *James B. Beam Distilling Co. v. Ga. (Beam)*, 501 U.S. 529, 541 (1991) (citing *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940)). The Federal Circuit has held that "[p]rinciples of finality and *res judicata* apply to agency decisions that have not been appealed and become final." *Cook v. Principi*, 318 F.3d 1334, 1336 (Fed. Cir. 2002); *see id.* at 1339 ("The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans' benefit claims."). In *Jordan*, the Federal Circuit noted the importance of finality, commenting that the appellant's argument that § 3.304(b) was void ab initio did not "give adequate weight to finality of judgments" and citing Supreme Court cases that "denied attempts to reopen final decisions in the face of new judicial pronouncements or decisions finding statutes unconstitutional." 401 F.3d at 1299 (citing *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995), for the proposition that new judicial interpretations of a statute apply to "all pending cases").

Generally, courts apply settled principles of law to the disputes before them but, "when the law changes in some respect," an argument for retroactivity arises. *Beam*, 501 U.S. at 534. A new rule of law is announced, in the civil context, when the court overrules past precedent or decides a case of first impression. *Reynoldsville Casket Co.*, 514 U.S. at 763. *Beam* makes clear that the retroactive application of a judicial pronouncement of the law is not absolute. Rather, as the Supreme Court has expressly determined, the application of judicial retroactivity in civil cases is bound by principles of res judicata and limited to those cases open on direct review.[4] In *Harper v.*

---

[4] In the criminal context, the Supreme Court even distinguishes between applying new rules to cases open on direct review and those cases subject to collateral attack. New rules in criminal law are applied to cases open on direct review but not to those subject to collateral attacks. *Compare Griffith v. Kentucky*, 479 U.S. 314 (1987) (applying new rules retroactively to criminal cases on direct review), *with Teague v. Lane*, 489 U.S. 288 (1989) (holding that new rules will not relate back to criminal convictions challenged on habeas corpus grounds).

*Virginia Department of Taxation*, the Supreme Court, relying on *Beam*, held that, when a court applies a "federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect *in all cases still open on direct review*." 509 U.S. 86, 97 (1993) (emphasis added); *see Beam*, 501 U.S. at 535.

Generally, there is little opportunity to collaterally attack final judgments in civil cases; however, in the veterans law universe, limited collateral attacks on final decisions are authorized by statute. *See Beam*, 501 U.S. at 540 (determining whether to apply new rules to cases on direct appeal or cases arising collaterally is not a problem in the civil arena as "there is little opportunity for collateral attack of final judgments"); *see also* 38 U.S.C. § 7111; *Cook*, 318 F.3d at 1339 (noting that CUE is a statutory exception to the rule of finality). An allegation of CUE is a statutorily permitted collateral attack on final VA decisions, with allegations of CUE evaluated based on the law that existed at the time of the final decision. *Russell*, 3 Vet.App. at 314 ("A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior. . . decision."); *see Willsey v. Peake*, 535 F.3d 1368, 1373 (Fed. Cir. 2008) ("[T]he record and the law as they existed at the time of the determination do not compel a finding of CUE in the 1983 determination.").

The Federal Circuit's interpretation of the presumption of soundness statute announced in *Wagner* is "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers*, 511 U.S. at 312-13. We do not, as our dissenting colleague contends, find that *Wagner* contained a new interpretation of section 1111. *Post* at 17. Instead, as further explained below, we find that the Federal Circuit's announcement in *Wagner* in 2004 of what section 1111 means cannot defeat the finality of a 1977 Board decision, *see Harper*, 509 U.S. at 97. This is so because consideration of CUE requires the application of the law as it was understood at the time of the 1977 decision, *see Willsey*, 535 F.3d at 1373; *Russell*, 3 Vet.App. at 314, and *Wagner* does not change how section 311 (now section 1111) was interpreted or understood before it issued. Applying a statute or regulation as it was interpreted and understood at the time a prior final decision is rendered does not become CUE by virtue of a subsequent interpretation of the statute or regulation by this Court or the Federal Circuit. When VA proposed the CUE regulation, VA anticipated that "[a]n interpretation of a statute or regulation could, in light of future interpretations – whether by the General Counsel or a court – be viewed

as erroneous. That would not, however, be the kind of error required for CUE, i.e., an error about which reasonable persons could not differ." 63 Fed. Reg. 27,534, 27,537 (May 19, 1998).

F. Application of Law to the Facts

Mr. George argues that the 2016 Board erred in stating that the 1977 Board *was not* required to find clear and unmistakable evidence that his schizophrenia was not aggravated by service in light of the 1977 version of § 3.304(b). Appellant's Br. at 3. Although the Secretary concedes error in this regard, the Court does not agree. *See Copeland v. Shinseki*, 26 Vet.App. 86, 90 n.4 (2012) (noting that the parties' agreement is not binding on the Court). In 1977, the Board was required to apply the law as it existed at that time, including § 3.304(b), requiring the Secretary to rebut the presumption of soundness with only clear and unmistakable evidence that an injury or disease existed before service. *See* 38 C.F.R. § 19.1 (1977) ("In its decisions, the Board is bound by the regulations of the Veterans Administration, instructions of the Administrator and precedent opinions of the chief law officer."). Consequently, it is not clear how the Board could have ignored this regulation or why the Board would have been required to find clear and unmistakable evidence of aggravation in 1977. This regulatory interpretation of the statutory presumption of soundness, requiring the Secretary to rebut the presumption only with clear and unmistakable evidence that a disability preexisted service, prevailed until 2003. *See Doran v. Brown*, 6 Vet.App. 283, 286 (1994) (holding that the presumption of soundness "can be overcome only by clear and unmistakable evidence that a disability existed prior to service"); *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991) (holding that the presumption of soundness had been rebutted when there was clear and unmistakable evidence that the appellant entered service with a preexisting ulcer); *see also* VA Gen. Coun. Prec. 3-2003 (July 16, 2003).

While the Federal Circuit's interpretation of the presumption of soundness statute in *Wagner* sets forth what the statute has always meant, it was not the interpretation or understanding of the statute before its issuance. *See Rivers*, 511 U.S. at 312-13; *Harper*, 509 U.S. at 97; *Russell*, 3 Vet.App. at 315. VA issued a precedential general counsel opinion in 2003 that invalidated the statute's initial implementing regulation, § 3.304(b). In 2004, the Federal Circuit issued its first judicial interpretation of the presumption of soundness statute – a new interpretation and different from VA's initial interpretation as expressed in § 3.304(b). *Jordan*, 401 F.3d at 1298 ("[T]here was a change in interpretation of section 1111 with the issuance of the opinion by the VA's General Counsel stating that 38 C.F.R. § 3.304 conflicted with the language of section 1111."). Because

11

we find that *Wagner* does not apply retroactively to final decisions, we conclude that the 2016 Board correctly stated the law as it existed in 1977.

With regard to judicial retroactivity, the parties agree that *Wagner* applies retroactively and its holding supports an allegation of CUE based on the misapplication of the presumption of soundness as discussed in *Patrick III. See* Appellant's Motion for Reconsideration at 9; Secretary's Response to the Appellant's Motion for Reconsideration at 6. The Court, however, disagrees. *See Copeland*, 26 Vet.App. at 90 n.4. Mr. George's argument is that if the Federal Circuit's interpretation of section 1111 in *Wagner*—that clear and unmistakable evidence is required to rebut both prongs of the presumption of sound condition—is what the law "'has meant since the date of enactment,'" *Patrick VI*, 668 F.3d at 1329 (quoting *Patrick III*, 242 F. App'x at 698), then the Board in September 1977 was required to apply that interpretation of the law and its failure to do so could constitute CUE.

As noted above, in *Patrick VI*, the Federal Circuit commented in a footnote that it had "soundly rejected [the argument that *Wagner* did not apply retroactively in the context of a CUE motion] in *Patrick III*." 668 F.3d at 1333 n.6. Mr. George essentially contends that, by explaining in the precedential *Patrick VI* opinion what the Federal Circuit held in the nonprecedential *Patrick III* opinion, the nonprecedential holding became precedential. *Patrick VI*, however, addresses whether EAJA fees are warranted; it does not directly address whether *Wagner* supports a basis for a CUE motion. Accordingly, we conclude that the Federal Circuit's pronouncement in *Patrick VI*—regarding the effect of *Wagner* on CUE motions—is dicta. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 352 n.12 (2005) ("Dictum settles nothing, even in the court that utters it."); *McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981) ("[D]ictum unnecessary to the decision in [a] case . . . . [is] not controlling in this case.").

Moreover, *Patrick III* is not binding precedent. *See* FED. CIR. R. 32.1(d) ("The court may refer to a nonprecedential disposition in an opinion or order and may look to a nonprecedential disposition for guidance or persuasive reasoning, but will not give one of its own nonprecedential dispositions the effect of binding precedent."). In *Patrick III*, the Federal Circuit clearly stated that the interpretation of a statute is retrospective and implied that *Wagner* could form the basis of an allegation of CUE. *Patrick III* also explained that this Court misread the limited holding of *Jordan*, and that *Jordan* did not support the proposition that this Court announced, i.e., that *Wagner could not* support an allegation of CUE. Interestingly, to support the legal proposition that a court's

interpretation of a statute is retrospective and explains what a statute has always meant, the Federal Circuit in *Patrick III* cited *Rivers*, 511 U.S. at 312, which noted that judicial decisions generally apply retroactively only to cases open on direct review.

The statements in *Patrick III* and the footnote in *Patrick VI* as to *Wagner's* retroactivity conflict with other precedential Federal Circuit caselaw. For example, in *DAV*, the Federal Circuit recognized that CUE is a collateral attack on a final regional office or Board decision and that "[t]he new interpretation of a *statute* can only retroactively [a]ffect decisions still open on direct review, not those decision[s] that are final." 234 F.3d at 698 (emphasis added) (citing *Harper*, 509 U.S. at 97). The Federal Circuit affirmed VA's regulation in *DAV*, including the language that CUE "does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation." 38 C.F.R. § 20.1403(e). Mr. George asserts that there was no "otherwise correct application" of the law in 1977 because *Wagner* stated what the law has always meant. At the time of the Board's 1977 decision, however, the law was interpreted and understood differently. *Russell*, 3 Vet.App. at 312-13. In another case dismissing an appeal from this Court, the Federal Circuit commented that, "where the regulations in existence at the time of the original decision imposed a different rule, *Wagner* cannot be the basis for a CUE claim." *Joyce v. Nicholson*, 443 F.3d 845, 848 (Fed. Cir. 2006).

Further, it would defy reason to hold, on the one hand, that VA's 2003 change in interpretation of § 3.304(b) cannot form the basis of a CUE challenge to the 1977 Board decision because the Board in 1977 applied the then-prevailing regulatory interpretation, *see Jordan*, 401 F.3d at 1298, and on the other hand that a statement of statutory interpretation announced in 2004 can form the basis of a CUE challenge to the 1977 Board decision because the statute has "always meant" something different than the then-prevailing interpretation, *see Patrick III*, 242 F. App'x at 698. Because the statutory interpretation of section 311 in 1977 was embodied in § 3.304(b) as it then existed, there was no practical difference between the application of section 311 and § 3.304(b) in 1977. *Wagner* did not exist in 1977, and therefore the proper application of section 311 in 1977 did not require clear and unmistakable evidence that a preexisting condition was not aggravated by service. *See Berger v. Brown*, 10 Vet.App. 166, 170 (1997) ("A new rule of law from a case decided in 1993 could not possibly be the basis of an adjudicative error in 1969.").

13

It is noted that the implications from the Federal Circuit's nonprecedential *Patrick* opinions and the *Patrick VI* EAJA opinion raise significant issues from the perspective of this specialized Court with regard to the review of CUE motions. *See Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) (noting this Court's special expertise and quoting *United States v. Haggar Apparel Co.*, 526 U.S. 380 (1999), for the proposition that an "Article I court's special 'expertise . . . guides it in making complex determinations in a specialized area of the law'"). The impact of allowing judicial decisions interpreting statutory provisions issued after final VA decisions to support allegations of CUE would cause a tremendous hardship on an already overburdened VA system of administering veterans benefits. Each judicial interpretation of a statute which changes a previously accepted meaning of the statute could spawn hundreds of allegations of CUE in prior final decisions. As a result of a deluge of CUE motions, VA's limited resources would be diverted from processing claims and hearing appeals to evaluating allegations of CUE based on new statutory interpretations. *See Exxon Corp. v. U.S. Dep't of Energy*, 744 F.2d 98, 114 (Fed. Cir. 1984) (considering the "substantial and impossible burdens on the administration of justice" when deciding whether a rule should be retroactive); *Cook*, 318 F.3d at 1336 (noting that the "[p]rinciples of finality and res judicata apply to agency decisions that have not been appealed and have become final").

Here, Mr. George's appeal of the denial of benefits for schizophrenia was not open for direct review when *Wagner* was decided. In 1977, Mr. George had exhausted his administrative remedy by appealing to the Board and this decision was final. Until 1988, veterans who received adverse Board decisions had virtually no recourse to the courts. *See* Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (codified as amended at 38 U.S.C. §§ 7251-7198); *Prinkey v. Shinseki*, 735 F.3d 1375, 1382 (Fed. Cir. 2013) ("[B]efore the enactment of [the VJRA] in 1988, there was virtually no judicial review of decisions by the VA."). Because Mr. George's case was not open for direct review, the judicial interpretation in *Wagner* does not apply retroactively. *See Harper*, 509 U.S. at 97; *Beam*, 501 U.S. at 535. Therefore, *Wagner's* interpretation of the presumption of soundness statute issued in 2004 did not change how the law was interpreted or understood when the Board issued its final decision in September 1977.

Thus, to the extent that Mr. George's CUE motion includes an argument that, in 1977, there was not clear and unmistakable evidence to show that his condition preexisted service, the 2016 Board noted that the evidence before the 1977 Board included evidence that Mr. George began to

14

hear voices in April 1975 and that he experienced psychiatric symptoms en route to Utah to join the military in May 1975. R. at 10-11; *see* R. at 1244, 1282. The Medical Board and the Physical Evaluation Board both concluded that Mr. George's mental condition preexisted service. R. at 11. Although the 2016 Board noted that the record contained conflicting statements as to when Mr. George stated that his psychiatric symptoms began, it stressed that the September 1977 Board considered and weighed the evidence of record. R. at 11. As the 2016 Board concluded, "any disagreement with how the [1977] Board evaluated the evidence []and how it concluded from the evidence that the [v]eteran's claimed psychiatric disability pre[]existed service . . . is inadequate to rise to the level of CUE." R. at 11; *see Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006) (explaining that a challenge to the legal sufficiency of the evidence requires an argument of *no evidence* to rebut the presumption of soundness or the *kind or character of the evidence* is insufficient as a matter of law, otherwise, the challenge is to the weight or sufficiency of fact required to rebut the presumption of soundness); *Kent v. Principi*, 389 F.3d 1380, 1383 (Fed. Cir. 2004) ("The clear and unmistakable evidentiary standard . . . does not require the absence of conflicting evidence."); 38 C.F.R. § 20.1403(d)(3). Accordingly, Mr. George has not demonstrated that the 2016 Board's decision that the 1977 Board decision does not contain CUE is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Pierce v. Principi*, 240 F.3d 1348, 1356 (Fed. Cir. 2001) (holding that the party challenging a final decision bears the burden of proving CUE); *Berger*, 10 Vet.App. at 169 ("[T]he appellant, who always bears the burden of persuasion on appeals to this Court, bears an extra-heavy burden when the appeal is a collateral attack, in the form of a CUE [motion], concerning a final decision. A final decision is entitled to a strong presumption of validity."); *Russell*, 3 Vet.App. at 315.

## IV. MANIFESTLY CHANGED OUTCOME

Alternatively, assuming that *Wagner* applies retroactively and can support allegations of CUE in final VA decisions, the 2016 Board did in fact assess Mr. George's CUE allegation as to *both* preexistence and aggravation and Mr. George fails to establish that the 2016 Board erred in concluding that the 1977 Board's errors as to each prong would not have manifestly changed the outcome of its 1977 decision. The 2016 Board conceded that the 1977 Board did not discuss the relevant statute or regulation or explain how there was clear and unmistakable evidence of a

15

preexisting condition or no aggravation of this condition.[5] R. at 10. Mr. George, however, must demonstrate that these errors, based on the evidence extant in 1977, would have manifestly changed the outcome of the 1977 Board's decision to deny benefits for schizophrenia.

Based on the 1977 record, Mr. George suggests that the Secretary could not have satisfied his evidentiary burden to rebut the presumption of soundness with clear and unmistakable evidence of preexistence and lack of aggravation of his schizophrenia. The 2016 Board noted, however, that there was conflicting evidence of *both* preexistence and aggravation, yet Mr. George does not allege that this evidence was, as a matter of law, insufficient to establish either preexistence or no aggravation of schizophrenia. *See Waltzer*, 447 F.3d at 1380; *Kent*, 389 F.3d at 1383. In that regard, Mr. George does not in any of his pleadings include analyses or arguments as to specific evidence in 1977. Our dissenting colleague makes these findings herself, even though Mr. George's pleadings are entirely silent in this regard. *See post* at 20-22. We decline to find facts to assist a represented appellant in addressing arguments he has, presumably strategically, chosen not to raise. *See Robinson v. Peake*, 21 Vet.App. 545, 554 (2008) (presuming that "an experienced attorney in veteran's law[ ] says what he means and means what he says"), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

Here, we conclude that Mr. George has failed to carry his burden of demonstrating that the 2016 Board erred in concluding that the 1977 Board's failure to cite the relevant statutory and regulatory provisions and to explain how the evidence of record rebutted both prongs of the presumption of soundness was not outcome determinative. Without evidence of a manifestly changed outcome, he has not demonstrated that the 2016 Board's finding of no CUE in the 1977 Board decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Pierce*, 240 F.3d at 1356; *Russell*, 3 Vet.App. at 315. Although the Court may have reached a different conclusion than the 1977 Board based on the evidence in the record, this fact does not establish CUE in the 1977 Board decision or error in the 2016 Board decision finding no CUE in the 1977 Board decision. *King v. Shinseki*, 26 Vet.App. 433, 442 (2014) ("[T]here will be

---

[5]As noted in *Gilbert v. Derwinski*, prior to enactment of the Veterans Judicial Review Act, the Board was not required to provide reasons or bases for its decisions. 1 Vet.App. 49, 56 (1990) ("Prior to the enactment of the VJRA, the decisions of the Board were required only to be in 'writing and . . . contain the findings of fact and conclusions of law separately stated.' 38 U.S.C. § 4004(d) (1982). Congress amended 38 U.S.C. § 4004(d), effective as of January 1, 1989, to mandate that a 'decision of the Board shall include . . . a written statement of the Board's findings and conclusions, *and the reasons or bases for those findings and conclusions,* on all material issues of fact and law presented on the record.' 38 U.S.C. § 4004(d)(1) (1988) (emphasis added).").

times when the Court arrives at a different conclusion when reviewing a motion to revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal.").

## V. CONCLUSION

For the reasons stated above, the Court AFFIRMS the March 1, 2016, Board decision finding no CUE in the September 1977 Board decision.

BARTLEY, *Judge*, dissenting: I respectfully disagree with the majority in two critical respects. First, I believe that my colleagues fundamentally mischaracterize *Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004), particularly in light of *Patrick v. Nicholson*, 242 F. App'x 695 (Fed. Cir. 2007) (*Patrick III*) and *Patrick v. Shinseki*, 668 F.3d 1325 (Fed. Cir. 2011) (*Patrick VI*), leading them to incorrectly conclude that *Wagner* contained a new understanding or interpretation of 38 U.S.C. § 1111 (née 311) not in effect in September 1977. Second, I believe that the Board's March 2016 conclusion that there was no CUE in the September 1977 decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because, had the Board properly applied the statutory presumption of soundness in September 1977 and not analyzed Mr. George's claim as one for service connection based on aggravation of a preexisting mental disorder, it would have had no choice but to grant him service connection. Accordingly, I must dissent from the majority's decision to affirm the March 2016 Board decision currently on appeal.

Regarding the first matter, I disagree with the majority's characterization of *Wagner* and its effect on the state of the law regarding the presumption of soundness. Although my colleagues insist that their decision relates only to the issue of the finality of the September 1977 decision, their finality analysis is grounded in an implicit assumption that *Wagner* contained a new understanding or interpretation of section 1111. But *Wagner* did not, as my colleagues suggest, contain a new understanding or interpretation of section 1111 that would need to be applied retroactively in order for Mr. George to prevail on his CUE motion. Rather, the Federal Circuit's judicial construction of section 1111 in *Wagner* provided "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994); *see also Schwartz v. State*, 361 P.3d 1161, 1180 (Haw. 2015) (explaining that when a court "announces a legal principle grounded in its

17

understanding of a particular statute, it merely expresses in definitive terms what that statute has always meant, both before and after that decision is handed down"). Although the Federal Circuit's statement of the law differed from VA's pre-2003 interpretation of section 1111 set forth in 38 C.F.R. § 3.304(b), *Wagner*'s implicit rejection of that interpretation did not constitute a change in law. *See State v. Ruiz,* 164 A.3d 837, 844 (Conn. App. Ct. 2017) ("A decision that corrects a mistaken interpretation of the law does not constitute a change in the law."). Instead, *Wagner* recognized that VA had "misinterpreted the will of the enacting Congress" and reaffirmed "what the statute has meant continuously since the date when it became law." *Rivers*, at 313 n.12; *see United States v. Peppers*, 899 F.3d 211, 230 (3d Cir. 2018).

Because "judicial decisions operate retrospectively" in this manner, *United States v. Security Indus. Bank*, 459 U.S. 70, 79 (1982), *Wagner*'s statement of what section 1111 has always meant cannot, as the majority concludes, only apply prospectively to cases decided after *Wagner* was issued in June 2004. Quite the contrary: the only way to give proper effect to *Rivers* and its progeny is to accept that *Wagner* merely explicated the law governing the presumption of soundness since the enactment of section 311, including the law extant in September 1977 when the challenged Board decision was issued. *See United States v. City of Tacoma, Wash.*, 332 F.3d 574, 580 (9th Cir. 2003) ("The theory of a judicial interpretation of a statute is that the interpretation gives the meaning of the statute from its inception, and does not merely give an interpretation to be used from the date of the decision.").

This view of the law is the most concordant with constitutional separation of powers. As the Federal Circuit declared in *Wagner*, the language of section 1111, though complicated, has always been "clear on its face" and thus "susceptible of interpretation without resort to *Chevron* deference." 370 F.3d at 1093. In holding that the plain language of section 1111 mandated that "the government must show clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation to overcome the presumption of soundness for wartime service," the Federal Circuit decreed that "it [was] clear that Congress intended . . . to effectively convert aggravation claims into ones for service connection when the government fails to overcome the presumption of soundness under section 1111." *Id*. at 1096. In effect, the Federal Circuit ruled that Congress left no room to debate the meaning and mechanics of section 1111, meaning that, to the extent that the principles set forth in *Wagner* conflicted with VA's interpretations of section 311 and pre-2003 1111, the will of Congress, not VA, should prevail. *See Chevron, U.S.A., Inc.*

18

*v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

This is precisely the result that the Federal Circuit prescribed in *Patrick III* and *VI*. As my colleagues recognize, *ante* at 8, the Federal Circuit in *Patrick III* expressly held that an allegation that the Board misapplied section 1111 "can serve as the basis for grounding a CUE claim" because, "[u]nlike changes in regulations and statutes, which are prospective, our interpretation of a statute is retrospective in that it explains what the statute has meant since the date of enactment." 242 F. App'x at 697 (citing *Rivers*, 511 U.S. at 312-13). Contrary to the majority's holding in this case, the Federal Circuit concluded that "our interpretation of [section] 1111 in *Wagner* did not change the law but explained what [section] 1111 has always meant" and vacated the decision and remanded the matter for the Court to consider the CUE motion in light of *Wagner*. *Id.* Then, when the case returned to the Federal Circuit for an EAJA dispute in *Patrick VI*, the Federal Circuit reiterated that it had "soundly rejected" the argument "that this court's interpretation of section 1111 did not apply retroactively in the context of a CUE claim." 668 F.3d 1325, 1333 n.6 (Fed. Cir. 2011). Unlike my colleagues, I am not willing to dismiss this unambiguous and germane guidance from our reviewing court, particularly not when that guidance is grounded in the unalterable principle that veteran-friendly congressional intent holds primacy over a VA interpretation that is less beneficial to veterans. *See Brown v. Gardner*, 513 U.S. 115, 118-22 (1994) (recognizing "the rule that interpretive doubt is to be resolved in the veteran's favor" and declining to defer to VA's regulatory interpretation of a statute that "flies against the plain language of the statutory text").

Moreover, I do not share the majority's concern that deciding this case in accordance with *Patrick III* and *VI* would "cause a tremendous hardship on an already burdened VA system of administering veterans benefits." *Ante* at 14. The circumstances of *Wagner* and this case are relatively narrow—both cases involve application of a plain language judicial interpretation of a statute to a claim that was denied on the basis of a VA regulation that clearly conflicted with that statute. But even if the *Rivers*'s theory of judicial construction would apply more broadly in the veterans' benefits CUE context, I have no reservations about requiring VA to remedy decades-old errors that prohibit otherwise deserving veterans and their dependents from receiving the benefits

to which they are statutorily entitled. I simply cannot endorse a CUE regimen that is so willing to exchange justice for administrative efficiency.[6]

Turning to the merits of the CUE motion, I am convinced, unlike my colleagues, that the Board's March 2016 finding that the September 1977 Board decision was not the product of CUE was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Each of the three CUE requirements is met in this case. First, consistent with *Rivers*, *Wagner*, and *Patrick III* and *VI*, the Board misapplied the law extant in 1977 because it did not afford Mr. George the presumption of soundness even though it failed to find a lack of in-service aggravation of schizophrenia by clear and unmistakable evidence. *See Wagner*, 370 F.3d at 1096 (explaining that the presumption of soundness applies, "even when there [i]s evidence of a preexisting condition, if the government fail[s] to show by clear and unmistakable evidence that a veteran's preexisting condition was not aggravated [in service]"). To the contrary, the Board appears to have applied the law regarding a claim for aggravation under 38 U.S.C. § 353, which places the burden to prove aggravation on the veteran, as opposed to section 311, which shifts the burden to the Secretary to show no aggravation by clear and unmistakable evidence. R. at 1176 (faulting the veteran for "fail[ing] to provide the Administration with the further information requested in order that further consideration may be given to the veteran's claim for aggravation" and concluding that his "preexisting schizophrenia was not aggravated by his military service" (citing 38 U.S.C. § 353)).

Second, that error is undebatable: The Board found that the veteran's "induction examination reveals no psychiatric abnormality," triggering section 311, but the Board erroneously analyzed the claim under section 353, with its attendant burdens, without rebutting the aggravation prong of the presumption of soundness by clear and unmistakable evidence. This is an unequivocal violation of the law:

> When no preexisting condition is noted upon entry into service, the veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the

---

[6] Even assuming that *Wagner* announced a new rule of law and raised a retroactivity issue, there is good reason to distinguish this case from the Supreme Court's other cases outlined by the majority, which recognize that new rules of law do not apply retroactively to civil cases that are final. The animating principle in those cases was giving due respect to the finality of judicial decisions. But, unlike the average civil case where there are only very limited exceptions for collateral attack, Congress has bestowed on veterans' benefits claimants a statutory right to attack a final decision based on CUE. It is against this unusual backdrop, not that underlying the average civil case, that we should review this question.

veteran's disability was both preexisting and not aggravated by service. . . . [I]f the government fails to rebut the presumption of soundness under section 1111, the veteran's claim is one for service connection.

*Wagner*, 370 F.3d at 1096.

Finally, the Board's error was outcome-determinative because, *had the Board properly applied the presumption of soundness*, it would have granted service connection for schizophrenia.[7] The Board expressly found that the first element of service connection was satisfied. R. at 1176 (concluding that "examinations subsequent to the veteran's discharge reveal that he has schizophrenia").

The second element of service connection would have been met if the proper presumption of soundness analysis was conducted because the record in 1977 did not contain clear and unmistakable evidence that schizophrenia was not aggravated in service—thereby establishing that schizophrenia was incurred in service despite evidence that it preexisted service. *See Wagner*, 370 F.3d at 1094 (adopting the Government's position that, when VA fails to rebut the presumption of soundness, "whether and to what extent the veteran was entitled to compensation for the injury would be determined upon the assumption that the injury was incurred during service"); *Horn v. Shinseki*, 25 Vet.App. 231, 236 (2012) (holding that, "except for conditions noted at induction, the presumption of soundness ordinarily operates to satisfy the second [service-connection] requirement without further proof"). Evidence need not be uncontroverted to be clear and unmistakable, *see Kent v. Principi*, 389 F.3d 1380, 1383 (Fed. Cir. 2004), and I recognize that the record before the Board in September 1977 contained conflicting evidence as to whether schizophrenia was aggravated in service. *Compare* R. at 1280-84 (Aug. 1975 Medical Evaluation Board (MEB) finding of aggravation), *with* R. at 1294 (Aug. 1975 Physical Evaluation Board (PEB) finding of no aggravation). But because the record evidence of a lack of aggravation in this case is legally insufficient to constitute clear and unmistakable evidence to rebut the second prong of the presumption of soundness, schizophrenia must be presumed to have been incurred in service. *See Kinnaman v. Principi*, 4 Vet.App. 20, 27-28 (1993) (noting that the burden of proof to rebut

_____

[7] My colleagues accuse me of improperly finding facts on behalf of Mr. George. *Ante* at 16. However, I am finding facts only to the extent necessary to determine whether the error committed by the Board in finding no CUE in the September 1977 decision was prejudicial. *See Simmons v. Wilkie*, 30 Vet.App. 267, 283-84 (2018) (explaining that, once the Court finds error in the Board's determination that there was no CUE in a prior final rating or Board decision, the Court may examine the facts underlying the prior decision and find any facts necessary to determine whether the Board's error was harmless).

the prongs of the presumption of soundness is "formidable" and concluding that evidence supporting the Board's finding of preexistence that was not "absolutely certain" did not rise to the level of clear and unmistakable evidence in light of a contrary PEB report). Thus, in the absence of clear and unmistakable evidence of a lack of aggravation, schizophrenia must be presumed to have been incurred in service.

Finally, the third element of service connection is satisfied via application of 38 C.F.R. § 3.303(b) (1977). In September 1977, that regulation provided that "[w]ith chronic disease shown as such in service (or within the presumptive period under [38 C.F.R.] § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes." 38 C.F.R. § 3.303(b) (1977). As the Federal Circuit explained in *Walker v. Shinseki*, pursuant to § 3.303(b)

> [i]f a veteran can prove a chronic disease "shown in service," and there are no intercurrent causes, the manifestation of the chronic disease present at the time the veteran seeks benefits establishes service connection for the chronic disease. By treating all subsequent manifestations as service connected, the veteran is relieved of the requirement to show a causal relationship between the condition in service and the condition for which disability compensation is sought. In short, there is no "nexus" requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease.

708 F.3d 1331, 1335-36 (Fed. Cir. 2013) (quoting 38 C.F.R. § 3.303(b)); *see Groves v. Peake*, 524 F.3d 1306, 1309 (Fed. Cir. 2008) ("The plain language of § 3.303(b) establishes a presumption of service connection (rebuttable only by 'clearly attributable intercurrent causes') for a chronic disease which manifests during service and then again 'at any later date, however remote.'" (quoting 38 C.F.R. § 3.303(b)).

In its September 1977 decision, the Board specifically found that Mr. George was diagnosed with schizophrenia in service, R. at 1172 (citing R. at 1280, 1282 (Aug. 1975 MEB diagnoses of paranoid schizophrenia); 1294 (Aug. 1975 PEB diagnosis of the same)), and was later diagnosed with chronic schizophrenia within the 1-year presumptive period following service, R. at 1173 (citing a March 1976 VA examiner's "diagnosis of chronic undifferentiated schizophrenic reaction"); *see* R. at 1244 (May 1976 RO decision denying service connection for "Schizophrenic Reaction, Chronic Undifferentiated Type"). Because these Board findings are favorable to the veteran and reflect that he was diagnosed with a mental disorder in service that was shown to be

chronic within the relevant presumptive period, and the record in September 1977 did not contain evidence that attributed his then-current schizophrenia to an intercurrent cause, § 3.303(b) should have been applied and the linkage element of service connection should have been presumptively established, without the need to present any independent evidence of linkage. *See* 38 C.F.R. § 3.309(a) (1977) (classifying psychoses as chronic diseases).[8]

This is precisely the situation that the Federal Circuit addressed in *Groves*, where it reversed a Court decision affirming a Board decision that found no CUE in a prior RO decision that failed to apply § 3.303(b) to a claim for service connection for schizophrenia. Mr. Groves, like Mr. George, was diagnosed with paranoid schizophrenia during service, was medically discharged for that condition, and was again diagnosed with paranoid schizophrenia "shortly after discharge." *Groves*, 524 F.3d at 1310. The Federal Circuit in *Groves* held that this Court "committed legal error by disregarding the applicability of § 3.303(b) and requiring medical evidence to establish a nexus between the two diagnoses," and concluded that proper application of § 3.303(b) to the diagnoses in the record established CUE in the prior RO decision "as a matter of law" because Mr. Groves was entitled to presumptive service connection. *Id.* I see no principled basis upon which to distinguish *Groves* from the instant case, meaning that correction of the alleged error in this case would have unquestionably resulted in a manifestly different outcome for Mr. George.

Again, it is important to keep in mind the error that Mr. George is seeking to remedy. The language of section 311 in September 1977 was the same language in section 1111 in June 2004 that the Federal Circuit in *Wagner* described as "clear" and susceptible of only one interpretation. 370 F.3d at 1093. The only reason that Mr. George was deprived of the benefit of the presumption of soundness clearly envisioned and expressed by Congress was that a VA regulation, which was "inconsistent with the statute" and "impose[d] a requirement not authorized by [the statute]," dictated a different result. VA Gen. Coun. Prec. 3-2003 (July 16, 2003). Because, under *Rivers* and *Patrick III* and *VI*, the version of section 311 extant in September 1977 meant what the Federal Circuit in *Wagner* said that Congress clearly intended it meant, VA's failure to abide by that statutory command constituted an undebatable and outcome-determinative misapplication of the law. Because CUE was designed to remedy precisely this type of error, *see Joyce v. Nicholson*,

---

[8] Both this Court and the Federal Circuit have held that schizophrenia is a psychosis within the meaning of § 3.309(a). *See Groves*, 524 F.3d at 1309-10; *Ford v. Gober*, 10 Vet.App. 531, 535 (1997).

23

19 Vet.App. 36, 48 (2005); *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc), I cannot agree with my colleagues that, before the *Wagner* decision in 2004, VA's failure to rebut the statutory presumption of soundness by a showing of clear and unmistakable evidence that a condition both preexisted service and was not aggravated by service could not constitute CUE. Applying that analysis to this case, I would conclude that the Board in March 2016 committed reversible error in finding no CUE in the September 1977 Board decision that denied service connection for schizophrenia. Accordingly, I respectfully dissent.