# United States Court of Appeals for the Federal Circuit

---

**CAROLYN J. PATRICK,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7012

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-10899.

---

Decided: December 22, 2011

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

KENNETH S. KESSLER, Attorney, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General

Counsel, United States Department of Veterans Affairs, of Washington, DC.

_____

Before NEWMAN, MAYER, and O'MALLEY, *Circuit Judges*.

MAYER, *Circuit Judge*.

Carolyn J. Patrick ("Mrs. Patrick") appeals from a final judgment of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying her application for an award of attorney fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). *See Patrick v. Shinseki*, 23 Vet. App. 512 (2010) ("*Patrick IV*"). We reverse and remand.

### BACKGROUND

This is the third time Mrs. Patrick has appealed to this court. The history of her claim seeking dependency and indemnity compensation is detailed in our previous decisions, *see Patrick v. Nicholson*, 242 F. App'x 695 (Fed. Cir. 2007) ("*Patrick III*"); *Patrick v. Principi*, 103 F. App'x 383 (Fed. Cir. 2004) ("*Patrick I*"), and need only be summarized here.

Mrs. Patrick's husband, James Curtis Patrick ("Patrick"), served on active duty in the United States Army from August 1958 through May 1959, when he was discharged due to rheumatic heart disease. Although Patrick's heart condition was not noted during the medical examination he underwent prior to his entry into service, subsequent in-service exams revealed heart abnormalities.

On May 26, 1959, Patrick filed a claim seeking service-connected benefits for rheumatic heart disease. The Board of Veterans' Appeals ("board") denied his claim, concluding that he had suffered from "many severe car-

diac symptoms" prior to his induction into service. Patrick subsequently filed several other claims seeking service-connected benefits for his heart disability, but all of these claims were denied.

On January 29, 1985, Patrick died of an acute myocardial infarction. Soon thereafter, Mrs. Patrick filed an application with the Department of Veterans Affairs ("VA") for dependency and indemnity compensation, alleging that her husband had died as a result of service-connected heart disease. *See* 38 U.S.C. § 1310 (authorizing benefits for the surviving spouse of a veteran who dies from a service-connected disability). In a March 1986 decision, the board denied her claim, concluding that Patrick's rheumatic heart disease was incurred prior to his military service and that "the clinical evidence in its entirety fails to demonstrate that [Patrick's] antecedent rheumatic heart disease worsened during his short period of active service."

In 1992, Mrs. Patrick filed a claim to reopen the board's 1986 decision, arguing that it contained clear and unmistakable error ("CUE"). She alleged that "if in fact [her husband's] heart condition existed prior to [his] service . . . it worsened and was aggravated by service to the point of his being found unfit for duty and eventually discharge[d]." In 1999, however, the board denied Mrs. Patrick's request to reopen her claim, and this decision was affirmed, in 2002, by the Veterans Court. *See Patrick v. Principi*, No. 99-916, 2002 U.S. App. Vet. Claims LEXIS 979 (Vet. App. Aug. 13, 2002).

Mrs. Patrick then appealed to this court. She argued that the presumption of soundness contained in 38 U.S.C. § 1111 can only be rebutted by clear and unmistakable evidence that: (1) a disease or injury existed prior to service; and (2) the disease or injury was not aggravated

by service. *See Patrick I*, 103 F. App'x at 384. We agreed. As we had recently explained in *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004), both the plain language and legislative history of section 1111 make clear that the presumption of soundness can only be rebutted by clear and unmistakable evidence *both* that a condition existed prior to service and that it was not aggravated by service. *See Patrick I*, 103 F. App'x at 384-85. Because the government had failed to establish that Patrick's rheumatic heart disease was not aggravated by his military service, we vacated the 2002 Veterans Court decision and remanded for reconsideration of Mrs. Patrick's claim. *Id.* at 385.

On remand, however, the Veterans Court failed to resolve the issue of whether the government had proven by clear and unmistakable evidence that Patrick's rheumatic heart disease was not aggravated during his active military service. Instead, the court reaffirmed the 1999 board decision denying Mrs. Patrick's CUE claim on the alternative ground that this court's interpretation of section 1111, which had been articulated in both *Wagner* and *Patrick I*, should not be given retroactive effect in the context of a CUE claim. *See Patrick v. Nicholson*, No. 99-916, 2006 U.S. App. Vet. Claims LEXIS 39, at *26-27 (Vet. App. Feb. 1, 2006) ("*Patrick II*"). In support, the Veterans Court relied upon this court's intervening decision in *Jordan v. Nicholson*, 401 F.3d 1296, 1298-99 (Fed. Cir. 2005), which held that the VA's recent interpretation of 38 C.F.R. § 3.304, the implementing regulation for section 1111, did not have retroactive application in a CUE case. *See Patrick II*, 2006 U.S. App. Vet. Claims LEXIS 39, at *26.

On appeal, this court reversed, concluding that the decision of the Veterans Court was based upon a "misreading of *Jordan*." *Patrick III*, 242 Fed App'x at 697. We

explained that "*Jordan* addressed whether a change in the regulatory interpretation of a statute had retroactive effect on CUE claims, not whether [this court's] interpretation of [a] statute . . . had retroactive effect on CUE claims." *Patrick III*, 242 Fed App'x at 697. In *Jordan*, the question was whether retroactive effect should be given to the VA's determination that section 3.304(b)[1], the implementing regulation for section 1111, was invalid because it was inconsistent with section 1111. *See Jordan*, 401 F.3d at 1298-99; *Patrick III*, 242 Fed App'x at 697-98. In contrast, Mrs. Patrick's claim did not involve the applica-

---

[1]    In 1999, when the board denied Mrs. Patrick's CUE claim, section 3.304(b) provided that the presumption of soundness could be rebutted merely by providing evidence that a particular injury or disease existed prior to service:

> The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto.    Only such conditions as are recorded in examination reports are considered as noted.

38 C.F.R. § 3.304(b) (as in effect prior to May 4, 2005).

In July 2003, prior to our decisions in *Wagner* and *Patrick I*, the General Counsel of the VA issued an opinion concluding that section 3.304(b) was invalid because it was inconsistent with section 1111, which requires clear and unmistakable evidence both that a condition existed prior to service and that it was not aggravated by service. *See* VA Op. Gen. Couns. Prec. 3-2003 (July 16, 2003), *available at* http://www.va.gov /ogc/docs/PREC3-2003.doc ("2003 VA General Counsel Opinion"); *see also Wagner*, 370 F.3d at 1092.

tion of section 3.304, but was instead based directly on section 1111:

> The limited holding of *Jordan* does not apply to Mrs. Patrick's case, for she never argued that the implementing regulation for § 1111 was invalid, that the VA's change in the interpretation of the statute in its regulation was retroactive, or that the 1986 Board erroneously applied the implementing regulation. Indeed, the 1986 Board decision does not even refer to the implementing regulation for § 1111.

*Patrick III*, 242 F. App'x at 698.

We made clear, moreover, that "[u]nlike changes in regulations and statutes, which are prospective, our interpretation of a statute is retrospective in that it explains what the statute has meant since the date of enactment." *Patrick III*, 242 F. App'x at 698. Because we concluded that the decision of the Veterans Court had been "neither in accordance with the law nor with our previous remand instructions," we vacated the court's decision and again remanded for a determination of whether the government could rebut section 1111's presumption of soundness by providing clear and unmistakable evidence that Patrick's rheumatic heart disease had not been aggravated by his military service. *Id.*

The Veterans Court thereafter remanded Mrs. Patrick's claim to the board, which concluded that the government had failed to establish that Patrick's heart disease was not aggravated by his military service. Accordingly, the board granted Mrs. Patrick's claim for dependency and indemnity compensation.

Mrs. Patrick then filed an application for attorney fees and expenses under the EAJA. On June 29, 2009,

the Veterans Court, in a single judge decision, denied Mrs. Patrick's application. The court subsequently issued a reconsideration decision, which again denied Mrs. Patrick's application for an EAJA award. The court stated that "when the statutory framework presents a confusing tapestry, the Secretary can be substantially justified in taking a position regardless of whether that position later turns out to be wrong." *Patrick IV*, 23 Vet. App. at 515. The court determined, moreover, that because the VA's position was supported by the court's then-existing precedent, it "had a reasonable basis in law and fact." *Id.* at 518. Mrs. Patrick filed a timely appeal to this court.

## DISCUSSION

We have jurisdiction over appeals from the Veterans Court under 38 U.S.C. § 7292. Interpretation of the EAJA is a question of law, subject to *de novo* review. *Kelly v. Nicholson*, 463 F.3d 1349, 1352 (Fed. Cir. 2006). Although this court's jurisdiction over appeals from the Veterans Court does not extend to challenges to factual determinations or the application of a statute or regulation to the facts of a particular case, *see* 38 U.S.C. § 7292(d), "[w]e have recognized . . . that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a question of law," *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004). Thus, the issue of whether the Veterans Court applied the correct legal standard in evaluating whether the government's position was "substantially justified" for purposes of the EAJA is a legal determination that falls squarely within the scope of our appellate jurisdiction. *Smith v. Principi*, 343 F.3d 1358, 1361 (Fed. Cir. 2003).

The essential objective of the EAJA[2] is to ensure that litigants "will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *Scarborough v. Principi*, 541 U.S. 401, 407 (2004) (citations and internal quotation marks omitted). The statute plays a particularly important role in the uniquely pro-claimant system for adjudicating veterans' claims:

> Removing [deterrents to seeking judicial review] is imperative in the veterans benefits context, which is intended to be uniquely pro-claimant, and in which veterans generally are not represented by counsel before the [regional office] and the board. [The] EAJA is a vital complement to this system designed to aid veterans, because it helps to ensure that they will seek an appeal when the VA has failed in its duty to aid them or has otherwise erroneously denied them the benefits that they have earned.

*Kelly*, 463 F.3d at 1353 (citations omitted).

---

[2]    In relevant part, the EAJA provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Under the EAJA, a prevailing party in litigation against the government is entitled to recover reasonable attorney fees and expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of establishing that its position was substantially justified. *Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir. 1995). The term "substantially justified" means that the government's position was "justified in substance or in the main," and had a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and internal quotation marks omitted). The "position" of the government includes actions taken at the agency level as well as arguments made during litigation. *Smith*, 343 F.3d at 1361-62; *see also Comm'r, Immigration & Naturalization Serv. v. Jean,* 496 U.S. 154, 161-62 (1990) ("Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.").

## I.

The government can establish that its position was substantially justified if it demonstrates that it adopted a reasonable, albeit incorrect, interpretation of a particular statute or regulation. *See Pierce*, 487 U.S. at 566 n.2 (emphasizing that an erroneous position could be substantially justified "if a reasonable person could think it correct"). Where, however, the government interprets a statute in a manner that is contrary to its plain language and unsupported by its legislative history, it will prove difficult to establish substantial justification. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) (concluding that the government's position was not

substantially justified where "it was wholly unsupported by the text of the applicable regulations" (citations and internal quotation marks omitted)); *Halverson v. Slater*, 206 F.3d 1205, 1212 (D.C. Cir. 2000) (holding that the government's position was not substantially justified where it was contrary to "the easily ascertainable plain meaning of" a statute); *Marcus v. Shalala*, 17 F.3d 1033, 1038 (7th Cir. 1994) (concluding that the government's position was not substantially justified where it was "manifestly contrary to the [controlling] statute" (citations and internal quotation marks omitted)); *Or. Natural Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992) (holding that the government's position was not substantially justified where it was contrary to the "clear" language of a statute and its legislative history).

Here, the VA denied Mrs. Patrick's claim for dependency and indemnity compensation based upon an interpretation of section 1111 that was contravened by both the statute's plain language and its legislative history. Section 1111 provides:

> [E]very veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or *where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.*

38 U.S.C. § 1111 (emphasis added).

The VA interpreted this provision to mean that the presumption of soundness could be rebutted by evidence that an injury or disease preexisted service, irrespective of whether there was clear and unmistakable evidence that the condition was not aggravated by service. As we

explained in *Wagner*, 370 F.3d at 1093, however, section 1111, on its face, requires that the presumption of soundness can be rebutted only by clear and unmistakable evidence that a preexisting condition was not aggravated by service. Indeed, while *Wagner* was pending in this court, the General Counsel of the VA issued an opinion acknowledging that "[t]he plain language of [section 1111] provides that the presumption of soundness is rebutted only if clear and unmistakable evidence establishes both that (1) the condition existed prior to service and (2) the condition was not aggravated by service." 2003 VA Gen. Counsel Op. 2.

The government points to nothing in the legislative history of section 1111 which could reasonably support the VA's original determination that the presumption of soundness could be rebutted even absent clear and unmistakable evidence that a veteran's preexisting disability was not aggravated by service. To the contrary, the relevant legislative history makes clear that the VA's original interpretation of the statute was incorrect. In *Wagner*, we reviewed the legislative history of section 1111[3] in detail and concluded that Congress specifically intended "that a presumption of soundness would apply, even when there was evidence of a preexisting condition, if the government failed to show by clear and unmistakable evidence that a veteran's preexisting condition was not aggravated." 370 F.3d at 1096. [4]

———————

[3]    Section 1111's presumption of soundness standard was previously codified at 38 U.S.C. § 311. *See* Dep't of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5(a), 105 Stat. 378, 406 (1991).

[4]    Under a 1924 statute, the World War Veterans' Act, ch. 320, § 200, 43 Stat. 607, 615 (1924), a veteran was conclusively presumed to be in sound condition, except as

## II.

On appeal, the government does not dispute that the VA's original interpretation of section 1111 was unsupported by either the statute's plain language or its legislative history. The government argues, however, that the Veterans Court correctly determined that the VA's position was substantially justified because that position was supported by that court's then-existing precedent. [5]

---

to the conditions and infirmities noted at the time of his induction into service. *See Wagner*, 370 F.3d at 1094. In 1934, however, Congress enacted a new statute, applicable to veterans of World War I, which provided that a veteran was presumed to be in sound condition at induction into service, but that the presumption could be rebutted by clear and convincing evidence that a veteran's condition or injury: (1) existed prior to his military service; and (2) was not aggravated by that service. *See* Independent Offices Appropriation Act, ch. 102, § 27, 48 Stat. 509, 524 (1934) (the "1934 Act"). Subsequently, Congress became concerned that World War II veterans—to whom the 1934 Act did not apply—were unjustifiably being denied benefits. *See Wagner*, 370 F.3d at 1095. It therefore passed legislation, in 1943, which specifically stated that the VA could only rebut the presumption of soundness if it provided clear and unmistakable evidence that a claimant's preexisting condition was not aggravated by his military service. *Id.* at 1095-96 (citing S. Rep. No. 78-403, at 2, 6 (1943)).

[5] Mrs. Patrick argues that the position of the government was not substantially justified because the 1999 board decision denying her claim erroneously applied the presumption of aggravation under 38 U.S.C. § 1153, rather than the presumption of soundness under section 1111. We disagree. As the Veterans Court correctly noted, "[a] review of the 1999 Board decision reveals an analysis clearly focused on whether there existed clear and unmistakable evidence that the disability at issue, which was not noted on Mr. Patrick's service entry ex-

We do not find this reasoning persuasive. We have repeatedly made clear that the substantial justification inquiry requires an analysis of the "totality of the circumstances" surrounding the government's adoption of a particular position. *Smith*, 343 F.3d at 1362; *Essex Electro Eng'rs, Inc. v. United States*, 757 F.2d 247, 253 (Fed. Cir. 1985); *Bailey v. United States*, 721 F.2d 357, 360 (Fed. Cir. 1983). Here, although the Veterans Court acknowledged this "totality of circumstances" standard, it improperly focused on only one factor—the fact that the court itself had previously upheld the VA's erroneous interpretation of section 1111—in denying Mrs. Patrick's EAJA application. *See Patrick IV*, 23 Vet. App. at 516 (concluding that the government's position at the administrative stage had been substantially justified because it was supported by "then-existing precedent established by [the] VA and upheld by [the Veterans Court] concerning rebutting the presumption [of soundness] under section 1111"); *id.* at 518 (concluding that the government's position at the litigation stage had "a reasonable basis in law and fact" because it "followed established [Veterans Court] precedent").

Whether or not the position adopted by the government comports with then-existing precedent on a particular issue is an undeniably important factor in the assessment of whether that position was substantially justified. *See White v. Nicholson*, 412 F.3d 1314, 1316-17 (Fed. Cir. 2005); *Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988) (en banc). The fact that the Veterans Court had previously upheld the VA's erroneous interpretation of section 1111 does not, however, resolve

---

amination form, preexisted service, an analysis that would not have been necessary if the Board were applying [the presumption of aggravation under] section 1153." *Patrick IV*, 23 Vet. App. at 517.

the substantial justification inquiry. *Pierce*, 487 U.S. at 569 ("Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."); *Essex*, 757 F.2d at 253 (rejecting the "single-factor approach" to determining whether the government's position was substantially justified). "[T]he position of the United States is not shown to have been substantially justified merely because the government prevailed before the tribunal below," for "[i]f that were the rule, attorney's fees never could be awarded in favor of an appellant against the government." *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1392 (Fed. Cir. 1982); *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed. Cir. 1993) (concluding that the government's position was not substantially justified even where the Armed Services Board of Contract Appeals had found that position "convincing"); *see also Role Models*, 353 F.3d at 967 (holding that the government's position was not substantially justified notwithstanding the fact that it had been accepted by the district court); *Marcus*, 17 F.3d at 1037-38 (concluding that where the government's position was directly contrary to the plain language of the controlling statute, it was not substantially justified even where it had been accepted by courts in other circuits).

"The totality of the circumstances, by its very description, does not exclude any valid issue from consideration." *White*, 412 F.3d at 1317; *see also Essex*, 757 F.2d at 253. Here, however, the Veterans Court rejected Mrs. Patrick's EAJA application without considering all of the pertinent factors surrounding the government's erroneous denial of her claim for dependency and indemnity compensation. In particular, the court did not discuss, and apparently did not consider, the fact that the government had adopted an interpretation of section 1111 that was wholly

unsupported by either the plain language of the statute or its legislative history.[6] *Cf. Fed. Election Comm'n v. Political Contributions Data, Inc.*, 995 F.2d 383, 387 (2d Cir. 1993) (emphasizing that "[i]t would be hard to imagine how it could be held that one had been 'substantially justified' in defying the will of Congress" by interpreting a statute in a manner contrary to its plain language and legislative history).  While resolution of the question of whether to award attorney fees "should not result in a second major litigation," *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983), a determination as to whether the government's position was substantially justified requires a thorough evaluation of the legal and factual support for the position that it adopted, *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).  In short, a court is required "to look at the entirety of the government's conduct," including the agency actions that gave rise to the litigation, "and make a judgment call whether the government's overall position had a reasonable basis in both law and fact."  *Id.* (footnote omitted).  We therefore re-

---

[6]    Nor did the Veterans Court fully assess the question of whether the government was substantially justified in arguing, following our decisions in *Wagner*, 370 F.3d at 1094-96, and *Patrick I*, 103 F. App'x at 384-85, that this court's interpretation of section 1111 did not apply retroactively in the context of a CUE claim.  We soundly rejected this argument in *Patrick III*, where we explained that "[u]nlike changes in regulations and statutes, which are prospective, our interpretation of a statute is retrospective in that it explains what the statute has meant since the date of enactment."  242 F. App'x at 698.  We emphasized, moreover, that "our interpretation of § 1111 . . . did not *change* the law but explained what § 1111 has always meant," and should therefore be applied to Mrs. Patrick's claim alleging CUE in the board's previous decision denying her application for dependency and indemnity benefits.  *Id.*

verse the judgment of the Veterans Court and remand for a determination of whether, in light of the totality of the circumstances, the government carried its burden of demonstrating that its position was substantially justified.

## CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed and the case is remanded for further proceedings in accordance with this opinion.

## COSTS

The appellant shall have her costs.

**REVERSED AND REMANDED**