# United States Court of Appeals for the Federal Circuit

---

**IN RE: SECRETARY OF THE ARMY,**
*Appellant*

---

2023-2067

---

Appeal from the Armed Services Board of Contract Appeals in No. 60451-EAJA, Administrative Judge J. Reid Prouty, Administrative Judge Arthur M. Taylor, Administrative Judge Richard Shackleford.

---

Decided:  December 26, 2024

---

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellant.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

---

Before REYNA, TARANTO, and CUNNINGHAM, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This appeal presents a question about the framework for determining the availability of an award of attorney's fees and expenses against the federal government under the Equal Access to Justice Act (EAJA), which provides for such an award to a prevailing party unless (as relevant

here) the position of the government was substantially justified. *See* 5 U.S.C. § 504 (provision governing agency adjudications, applicable here); 28 U.S.C. § 2412 (similar provision governing court cases). We address the threshold framing of the substantial-justification inquiry, and our ruling is a limited one. We reverse the categorical narrowing of the inquiry into substantial justification that appears in the decision on appeal, in which the Armed Services Board of Contract Appeals determined that the government did not establish the required substantial justification and awarded fees and expenses to the prevailing, non-government party. *CKY, Inc.*, ASBCA No. 60451-EAJA, 23-1 BCA ¶ 38,310, pp. 186,012–19, 2023 WL 2778410 (Feb. 15, 2023) (*Fees Decision*). We remand for the Board to redetermine, without the categorical narrowing we reject, how to exercise its discretion in resolving the substantial-justification issue. We do not decide what results might be within the range of available discretion in this case.

I

The EAJA issue arises from a case brought by CKY, Inc. in the Board against the United States Army Corps of Engineers (Corps) under the Contract Disputes Act. 41 U.S.C. §§ 7101–7109. CKY claimed that, in carrying out a task order under a fixed-price construction contract with the Corps, it incurred significant additional expenses from unexpected developments, contractually entitling it to compensation beyond the fixed price. CKY prevailed in recovering substantial additional compensation for particular expenses, while failing in its effort to recover compensation for other (assertedly even larger) expenses. *CKY, Inc.*, ASBCA No. 60451, 20-1 BCA ¶ 37,575, pp. 182,449–57, 2020 WL 1896785 (Apr. 13, 2020) (*Merits Decision*). The Board then awarded EAJA fees and expenses to CKY, and in doing so, the Board stated that it was categorically limiting its substantial-justification inquiry to the government's litigating position concerning the expenses for

which CKY was successful in obtaining recovery.  *Fees Decision*, at 186,013.  The government here disputes that threshold narrowing of focus in the EAJA analysis.

### A

In October 2012, the Corps awarded CKY a fixed-price task-order contract for CKY, in exchange for $932,349, to perform certain dewatering, culvert-installation, and other construction work in southern Louisiana.  *See* Appx. 547–50, 943; *Merits Decision*, at 182,449, 182,450–51 ¶¶ 2, 7–9.[1]  In November 2012, the government issued CKY a notice to proceed with the construction work and to complete it within 210 days.  Appx. 65 ¶ 2, 90; *Merits Decision*, at 182,450–51 ¶¶ 3, 9.  Heavy rainfall soon caused delays in scheduled work, and in January 2013, CKY identified water from the Mississippi River back-flowing into the construction site from two culverts that had not been disclosed in the task-order documents and drawings supplied by the government upon contracting.  Appx. 67 ¶¶ 3–4, 92–94; *Merits Decision*, at 182,451 ¶¶ 10–11, 182,455.

After discussions with CKY, the Corps agreed that the two culverts had not been disclosed at contracting, and in July 2013, it issued a Request for Proposal for CKY to specify construction details for a prospective fix, which would "[p]rovide additional drainage pipes and swales to direct the flow" from the two undocumented culverts (and one already documented culvert) into a new culvert and headwall.  *Merits Decision*, at 182,451–522 ¶¶ 11, 13–14.  CKY did so, and on May 7, 2014, the Corps issued a notice to proceed with the change.  *Id*. at 182,452 ¶ 14.  The Corps authorized payments reflected in contract Modifications 1E

---

[1]  In selecting and summarizing facts to provide background for discussing the legal issues we resolve, we do not preclude any fuller or more precise factual recitations, if necessary, on remand.

(December 2013), 1L (July 2014), and 1M (December 2014). Appx. 2183–86, 2198–200; *see Merits Decision*, at 182,452 ¶¶ 15–17. Modification 1M, which referred back to 1E and 1L, included a "compensation in full" clause concerning the new construction ordered. Appx. 2199–200; *Merits Decision*, at 182,452 ¶ 17.[2] CKY and the Corps also agreed to certain no-cost modifications that, because of high river-water levels and unusually severe weather, gave CKY more time to complete its contract work. Appx. 71–74, 2170–71, 2190–93.

B

In October 2014, CKY sought from the Corps a total of $828,126.70 in increased payments by submitting separate Requests for Equitable Adjustments pursuant to Federal Acquisition Regulations (FAR) 552.243-71, 48 C.F.R. § 552.243-71. *See* Appx. 75. For some of the requests, CKY invoked a FAR provision on "Differing Site Conditions," FAR 52.236-2, 48 C.F.R. § 52.236-2 (1984), which provides for adjustments based on site conditions that are materially different from those indicated in the contract and were reasonably unforeseeable. *See Merits Decision*, at 182,450 ¶ 1, 182,454. The contracting officer for the Corps itemized the requests and the separate amounts sought for each.

---

[2]    The provision states:

It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor, its subcontractors and suppliers for all costs and markups directly or indirectly attributable to the changes ordered, for all delays, impacts and extended overhead related thereto, and for performance of the change within the time frame stated.

Appx. 2200, quoted in *Merits Decision*, at 185,452 ¶ 17.

Appx. 75.[3]  She denied all the requests on April 7, 2014. *See* Appx. 75–76.

Acting pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7103(a)–(b), CKY submitted a certified claim to the Corps on June 17, 2015.  Appx. 65, 90; *see Merits Decision*, at 182,450 ¶ 1 (explaining that the contract included FAR 52.233-1, which subjects the contract to the Contract Disputes Act), 182,451 ¶ 18; *Hejran Hejrat Co. Ltd. v. United States Army Corps of Engineers*, 930 F.3d 1354, 1356–57 (Fed. Cir. 2019) (describing claim process).  In its claim, CKY sought $1,146,226 in compensation, asserting three bases—(1) "high river level impact" and (2) "undocumented drainage culverts" (both of which it called "changed site condition[s]") and (3) "government delay in response to [Request for Information]-15 (new headwall)," Appx. 90–94 (capitalization omitted)—but not allocating the total amount sought among the bases.  Appx. 95.  The first basis for the claim asserted that the Corps forced CKY to do work months before the contract-specified time, resulting in conditions that increased costs and resulted in lost materials.  Appx. 90; *Merits Decision*, at 182,453.  The second basis asserted that the two undocumented culverts caused a "volume of water draining into CKY's site" that was "significantly higher than what would be expected" from the conditions "specified in the contract plans," forcing

---

[3]    The contracting officer, in her subsequent decision denying the formal claim that CKY filed, grouped the requests as follows: (1) for the high river levels and unusually severe weather (two requests, for $489,340 and $5,747.43); (2) for the undocumented culverts ($188,014); (3) for the government's delay in providing information ($130,481).  Appx. 75 ¶ 10.  A final request—which CKY did not pursue when filing its formal claim to the Corps or appealing to the Board—sought compensation related to traffic-control work resulting from precipitation ($14,544.27).  *Id.*

CKY to do additional work prior to, and not compensated by later payments for, the agreed-upon construction work resulting from the July 2013 Request for Proposal and addressed in Modifications 1E, 1L, and 1M. Appx. 92; *Merits Decision*, at 182,455. In its third basis, CKY asserted that it incurred costs from the Corps' delay in responding to CKY's request for information about a new headwall. Appx. 94, 77.

The contracting officer issued a final decision denying the claim on December 11, 2015. Appx. 65–86. CKY appealed to the Board on February 19, 2016. Appx. 17, 39; *see* 41 U.S.C. §§ 7104(a), 7105(e)(1)(A). CKY asserted a contract entitlement to $710,807, plus available interest, Appx. 21, for costs related to the first two items: "untimely issuance of notice to proceed—high river level impact" and "changed site conditions—undocumented drainage culverts," Appx. 18–20 (capitalization omitted). CKY did not pursue the third basis (concerning the new headwall) to the Board. *See* Appx. 18–21; *Merits Decision*, at 182,452 ¶ 18.

After an evidentiary hearing, the Board issued a decision on liability on April 13, 2020. *Merits Decision*, at 182,449–50. The Board rejected CKY's argument about costs from the high river level, concluding that CKY could not complain of a defective contract specification (because the specification was patently ambiguous and CKY did not timely seek clarification), that the high water was not reasonably unforeseeable, and that CKY's failure to diligently seek clarification of a patent contract ambiguity precluded a claim of mutual mistake. *Merits Decision*, at 182,453–55. But the Board agreed with CKY about the undocumented culverts: The Board found the presence of the undocumented culverts established "differing site conditions"—conditions that were materially different from the conditions disclosed in the contract and reasonably unforeseeable—and the Board rejected the government's argument that the "compensation in full" clause of Modification 1M precluded the compensation CKY was now seeking for the

undisclosed culverts. *Id.* at 182,455–56. The Board therefore ordered the parties to determine the amount of payment in response to CKY's request for money related to the undocumented culverts. *Id.* at 182,456.

On May 2, 2022, the parties agreed that the government would pay CKY a principal amount of $185,000, plus interest of $28,530.93. Appx. 3880–82; *see Fees Decision*, at 186,012.

C

On June 1, 2022, within the thirty days allowed, *see* 5 U.S.C. § 504(a)(2), CKY applied to the Board under EAJA for an award of attorney's fees and expenses, requesting $230,034.10. Appx. 16; *Fees Decision*, at 186,015. The core EAJA provision applicable to the Board adjudication here states:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).[4] The Board concluded, on February 15, 2023, that CKY was entitled to fees and expenses under the provision. *Fees Decision*, at 186,011.

---

[4]   The EAJA provision for court adjudications, 28 U.S.C. § 2412, is materially the same as § 504 for present purposes. *See* 28 U.S.C. § 2412(d)(1)(A). Like the government in its brief to us, we rely on case law and other material involving § 2412 in addressing the issues here under § 504.

The Board concluded that CKY was a "party" under § 504(b)(1)(B) and had made a timely application under § 504(a)(2). *Fees Decision*, at 186,012. The Board also concluded, and the government did not dispute, that CKY was a "prevailing party" under § 504(a)(1). *Id.* at 186,012–13. The Board explained that CKY obtained a favorable liability ruling for expenses due to the undisclosed culverts and recovered a substantial sum ($185,000 plus interest) in compensation based on that ruling. *Fees Decision*, at 186,012–13 (noting that prevailing means succeeding "'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))).

The Board next addressed the question now before us—whether "the position of the government was substantially justified." § 504(a)(1). The Board gave a negative answer to that question. In framing its analysis, the Board addressed only "the government's litigation position," as opposed to the Corps' action (denying all claimed compensation) that triggered the litigation, and the Board then stated that "[t]he entirety of the government's litigation position is considered in determining whether its position is substantially justified and not just the posture on individual issues." *Fees Decision*, at 186,013. The Board immediately elaborated, however, with a seemingly categorical, narrow view of what it deemed that approach to mean:

> While the entirety of the government's litigation position must be considered in determining whether the government's position is substantially justified rather than its posture on individual issues, that entirety relates to the government's position on a particular claim to which the contractor prevailed and not to the litigation as a whole. *Goldhaber v. Foley*, 698 F.2d 193, 196–97 (3d Cir. 1983). In other words, the government must show its litigation position on the claim in which CKY

> prevailed, the undisclosed culverts, was substantially justified. Even though the government prevailed on other claims within the same litigation, that fact does not negate CKY's prevailing position on the undisclosed culverts claim.

*Id.*

Applying that approach, the Board held the government's position regarding the undisclosed culverts not to be substantially justified, deciding in particular that the government's reliance on the "compensation in full" clause of Modification 1M was contrary to the clear language of that clause (which refers only to work resulting from the July 2013 Request for Proposal). *Id.* at 186,013–15. The Board then added that the government did not contend that an award should be denied here because of any "special circumstances." *Id.* at 186,015; § 504(a)(1). Finally, the Board assessed what amount should be awarded for the undisclosed-culverts win (as opposed to the high-water-level loss), *Fees Decision*, at 186,015–18, and it arrived at an award of $58,845.41 in attorney's fees and expenses, *id.* at 186,018.

The Secretary of the Army timely appealed on June 14, 2023, pursuant to 41 U.S.C. § 7107(a)(1)(B). CKY decided not to participate as an appellee. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

II

An agency may avoid EAJA liability for fees and expenses if "the position of the agency was substantially justified." 5 U.S.C. § 504(a)(1). The Supreme Court has held that "the position of the agency" is "substantially justified" if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (explaining that this formulation "is no different from the 'reasonable basis in law and fact' formulation"). The Court has also

held that the agency has the burden of establishing such substantial justification. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

When the adjudicatory tribunal—here, the Board, *see* 41 U.S.C. § 7105(e)(1)(A)—determines whether the position of the agency was substantially justified, the determination is "discretionary" and is "reviewed for abuse of discretion." *Chiu v. United States*, 948 F.2d 711, 713 (Fed. Cir. 1991); *see Pierce*, 487 U.S. at 558–63; *id.* at 562 (explaining that "the question [of] whether the Government's litigating position has been 'substantially justified'" is "a multifarious and novel question, little susceptible, for the time being at least, of useful generalization" and is thus subject to the abuse-of-discretion standard of review). An "erroneous view of the law" is necessarily an abuse of discretion. *Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. 559, 563 n.2 (2014) (citations omitted). Thus, whether the Board relied on an incorrect legal standard in evaluating whether the "position of the agency was substantially justified" is an issue of law that we decide without deference. *See* 41 U.S.C. § 7107(b)(1); *Pierce*, 487 U.S. at 558; *Patrick v. Shinseki*, 668 F.3d 1325, 1329–30 (Fed. Cir. 2011); *Smith v. Principi*, 343 F.3d 1358, 1361 (Fed. Cir. 2003).

A

The Board's opinion on EAJA fees and expenses reflects a categorical, threshold narrowing of the inquiry in two ways. The Board first restricted its focus to substantial justification for "the government's litigation position," a formulation that (given usage in the area) indicates the exclusion from the substantial-justification inquiry of substantial justification for the pre-litigation agency action that triggered the litigation. *Fees Decision*, at 186,013. The Board then further limited the inquiry to whether there was substantial justification for "the government's position" concerning the "particular claim" on which "the

contractor prevailed," rather than "the litigation as a whole." *Id.* We address the correctness of those seemingly categorical narrowings of the inquiry. We do not decide whether, upon a broader inquiry, the Board might ultimately make a case-specific determination of no substantial justification because of the government's position on the claim for compensation for expenses due to the undisclosed culverts.

The government challenges the second of the two identified ways in which the Board narrowed the substantial-justification inquiry. We agree that the Board erred in that respect, and that error calls for a remand for reconsideration. As to the first of the identified ways in which the Board narrowed the inquiry, it is presented by the Board as a predicate for, and it is entwined with, the second, and it is in any event important to address both of the Board's limitations of its inquiry so that the decision on remand will be properly framed. We conclude that both categorical inquiry limitations are legally incorrect.

1

In relevant part, EAJA recites that an agency "that conducts an adversary adjudication shall award, to a prevailing party" attorney's fees and expenses "incurred by that party in connection with the proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified." 5 U.S.C. § 504(a)(1).[5] The statutory use of "*the* position," in referring to "an adversary adjudication" and "the proceeding," points distinctly away from an issue-by-issue or claim-by-claim inquiry. *Id.* (emphasis added). An individual

---

[5] Attorney's fees and expenses may also be withheld if "special circumstances make an award unjust." 5 U.S.C. § 504(a)(1). The government did not invoke that provision in this case.

adjudication or proceeding commonly involves multiple is-
sues and multiple claims—even (as here) distinct actions
by the defendant causing distinct (even if partially overlap-
ping) injuries.  Yet Congress, which must be assumed to
have known of that commonplace fact about litigation, used
a singular term in § 504(a)(1) rather than alternative
terms that would focus on distinct subjects within the liti-
gation whole.

In 1985, Congress amended EAJA to complicate, in one
way, the implication of singularity of meaning of "the posi-
tion" in § 504(a)(1).  Rejecting certain court decisions fo-
cused just on the arguments in the adjudication (or
litigation), *see* H.R. REP. NO. 99-120, at 9 (1985), Congress
added a definition of "position of the agency," stating that
the phrase

> means, in addition to the position taken by the
> agency in the adversary adjudication, the action or
> failure to act by the agency upon which the adver-
> sary adjudication is based . . . .

5 U.S.C. § 504(b)(1)(E), added by Equal Access to Justice
Act Amendments, Pub. L. 99-80, § 1(c)(3), 99 Stat. 183, 184
(1985); *see also id.* § 2(c)(2), 99 Stat. at 184–85 (counterpart
change in 28 U.S.C. § 2412(d)(2)(D)).[6]    The language

---

[6]    The definition adds a restriction on the amount of
fees and expenses, stating that they "may not be awarded
to a party for any portion of the adversary adjudication in
which the party has unreasonably protracted the proceed-
ings." § 504(b)(1)(E).

Congress did not provide a definition of agency "action"
in EAJA.  The Administrative Procedure Act contains a
definition of "agency action" (not by its terms applicable to
EAJA)—"the whole or a part of an agency rule, order, li-
cense, sanction, relief, or the equivalent or denial thereof,

recognizes that "position" in this context refers to two things: arguments in an adjudication; the agency "action" that gave rise to the adjudication. As a result, "the position" covers both of those things, and what must be "substantially justified" under § 504(a)(1) is that pair. Both the Board's categorical limitation to the litigation position and its categorical limitation of its inquiry to the specific subject on which the non-government party prevailed *within* the adjudication are counter to the statutory text.

Another statutory provision reinforces the conclusion that the Board erred in its premises. In the same 1985 amendments in which Congress added the "position of the agency" definition to include the underlying agency action, Congress added a sentence to § 504(a)(1):

> Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1), added by Pub. L. 99-80, § 1(a), 99 Stat. at 183; *see also* § 2, 99 Stat. at 184–85 (adding counterpart provision to 28 U.S.C. § 2412(d)(1)(B)). Of importance here, the language provides for consideration of the "administrative record, as a whole," rather than of particular issues or claims within the adjudication.[7]

---

or failure to act." 5 U.S.C. § 551(13); *see Lujan v. National Wildlife Federation*, 497 U.S. 871, 890–91 (1990) (discussing "agency action" and "final agency action").

[7] The language is not just expansive but restrictive in effect: It restricts the substantial-justification inquiry to that already-existing record. In 1984, Congress approved a bill to amend EAJA, which included agency action in the "position of the United States," but the President issued a

2

Additional support for our conclusion about the Board's dually erroneous framework can be found in *Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154 (1990), in which the Supreme Court addressed the EAJA provisions governing court actions, 28 U.S.C. § 2412. The Court's specific holding in *Jean* was that, if the government's position is determined not to have been substantially justified for the merits phase of the litigation, that determination suffices when the non-government party seeks fees and expenses for work done in securing EAJA fees and expenses; there is no additional substantial-justification inquiry into the government's position in opposing fees. *Id.* at 155–66. That specific holding is not applicable to this case (which does not involve how the merits and fees stages of a case relate to one another), but the Supreme Court's analysis in support of its holding is relevant to the issues before us.

The Court in *Jean* emphasized that the substantial-justification inquiry under EAJA is "properly focuse[d] on the governmental misconduct giving rise to the litigation." *Id.* at 165. The Court reinforced that "emphasis on the underlying Government action" through quotations from legislative history—a House Report bearing on the 1985 amendments stating that "'the Congressional intent is to provide for attorney fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid

---

veto, explaining his concern about a wide inquiry into the "agency decision-making process." 130 Cong. Rec. H32350–51 (daily ed. Oct. 30, 1984) (memorandum of disapproval from President Ronald Reagan on 1984 H.R. 5479). The sentence quoted above was added in the 1985 legislation, which became law, at least in part to mitigate those concerns. *See* 131 Cong. Rec. S20348 (daily ed. July 24, 1985) (remarks of Senator Charles E. Grassley).

such liability by reasonable behavior during the litigation,'" H.R. Rep. No. 98-992, at 9, 13 (1984); and a Senate Report stating much the same thing, S. Rep. No. 98-586, at 10 (1984). *Jean*, 496 U.S. at 159 n.7. Those passages undermine the Board's first categorical narrowing (to the litigating position) in the present case.

The Supreme Court in *Jean* also stated that EAJA's "reference to 'the position of the United States' in the singular . . . suggests that the court need make only one finding about the justification of that position." *Id.* at 159. It added that, although the "position" of the government "may encompass both the agency's prelitigation conduct and the . . . subsequent litigation positions," EAJA refers to "only one position, and it is to a position that the Government took in the past." *Id.* at 159–60; *see id.* at 160 (noting the statute's "reference to 'the record' . . . in the singular"). And the Court summarized its conclusion: "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62. Those passages undermine the Board's second categorical narrowing (to the issue on which the non-government party prevailed) in the present case.

3

Our own court's decisions recognize the aspects of the statute and *Jean* that undermine the two categorical limitations of the substantial-justification inquiry reflected in the Board's opinion in the present case. For example, in *Chiu*, we recognized that the substantial-justification inquiry applies to "the overall position of the government, both prior to and during litigation." 948 F.2d at 715. In *Smith*, we recognized the propriety of considering the "totality of the circumstances." 343 F.3d at 1361–63. In *Patrick*, we recognized that the "essential objective of the EAJA is to ensure that litigants 'will not be deterred from

seeking review of, or defending against, unjustified governmental action because of the expense involved,'" 668 F.3d at 1330 (footnote omitted) (quoting *Scarborough*, 541 U.S. at 407), and we therefore emphasized that "[t]he 'position' of the government includes actions taken at the agency level as well as arguments made during litigation," *id.*; *see also id.* at 1333, while also requiring consideration of all pertinent factors, *id.* at 1332–33. We made similar points in *DGR Associates, Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir. 2012), and again in *International Custom Products, Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016), where we noted our understanding of *Jean* to explain that "courts should consider all stages of the dispute before making a single determination about the Government's conduct," *id.* at 1361.

4

The conclusions we have drawn are in harmony with decisions of many courts of appeals, though there are recognized variations on particular aspects of *applying* the substantial-justification standard. *See*, *e.g., W.M.V.C.; A.P.V. v. Barr*, 926 F.3d 202, 209, 209 n.4 (5th Cir. 2019); *United States v. Johnson*, 920 F.3d 639, 649 (10th Cir. 2019); *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147, 1168–69, 1169 n.16 (9th Cir. 2019); *United States v. 515 Granby, LLC*, 736 F.3d 309, 315–17 (4th Cir. 2013) (relying on *Roanoke River Basin Association v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)); *United States v. Hurt*, 676 F.3d 649, 652 (8th Cir. 2012); *Gatimi v. Holder*, 606 F.3d 344, 349–50 (7th Cir. 2010); *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009); *United States v. $19,047.00 in United States Currency*, 95 F.3d 248, 251–52 (2d Cir. 1996); *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 131 (3d Cir. 1993).

It is not clear to us to what extent our conclusions are inconsistent with decisions of the D.C. Circuit. In 2000,

that court characterized a recent precedent of its own as treating the "position" of the government as "that which corresponds to the claim or aspect of the case on which the private party prevailed." *Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000). In the referred-to earlier precedent, the D.C. Circuit explained its concern about adopting an approach "so 'holistic' as to allow the government's generally justifiable conduct to defeat the otherwise legitimate EAJA claim of a litigant who has succeeded in obtaining precisely the relief it prayed from the government because of the substantially unjustified element under litigation," which would render EAJA "a virtual nullity." *Air Transport Association of Canada v. Federal Aviation Administration*, 156 F.3d 1329, 1332 (D.C. Cir. 1998). But it might be that the D.C. Circuit's concern is adequately addressed by the discretion of the adjudicative body (in determining whether the government's position is substantially justified) to decide the weight given under the "totality of the circumstances" analysis to the various elements of "the position of the agency." *See id.* at 1332 (explaining that "[v]irtually any government action is either grouped with other actions or is a component of some greater action," and "[p]resumably the government is usually substantially justified on most of its actions," but that Congress could not have intended for parties that "successfully challenged a government action as substantially unjustified and achieved a complete victory in terms of the relief prayed" to be prevented from "recover[ing] EAJA fees because of this well-nigh universal grouping"). The extent of any conflict in concrete results is therefore uncertain.

## B

For the foregoing reasons, the Board's decision cannot stand. We must vacate that decision and remand for reconsideration of the substantial-justification question without the categorical limitations reflected in the *Fees Decision* now before us. Our rejection of the two categorical restrictions the Board articulated does not compel a

particular bottom-line answer to the question of substantial justification in this case, and so we cannot either reverse or affirm the answer the Board gave in the *Fees Decision*.

We reiterate the limit on our ruling here: In rejecting the categorical limitations on the scope of the inquiry, we are not deciding how an inquiry not so constrained should come out. That determination, as we have already noted, is a matter of discretion. *See International Custom Products.*, 843 F.3d at 1358–59; *Chiu*, 948 F.2d at 713, 715 n.4. Legal constraints must be respected to avoid abusing discretion, but in this case, we think it advisable not to go beyond what we have held above and announce further legal constraints on particular choices before they are made on remand. We do note a few points that bear on the choices to be made on remand.

Thus, although we conclude that the Board improperly restricted its analysis to the action taken and arguments made by the Corps relating to the undocumented culverts, our precedent makes clear that, as long as the "totality of the circumstances" inquiry is not artificially restricted in that way, it can be and often properly is *applied* to focus on the "circumstances pertinent to the position taken by the government on the issue on which the claimant prevailed." *Smith*, 343 F.3d at 1363. In a case involving an EAJA determination by the United Court of Appeals for Veterans Claims, we explained that in exercising its discretion "[t]he court properly confined its substantial justification inquiry [under the 'totality of the circumstances' test] to the issues as to which the court held that [the party] was a prevailing party, i.e., the issues on which the court granted the joint motion for a remand." *Id.*

Moreover, it is important to recognize the character of the agency action at issue—the part of the "position of the agency" that is the "proper[] focus[]" here. *Jean*, 496 U.S. at 165. The Corps refused to make any of several requested

payments for work CKY asserted came within the Corps' payment duties under an applicable Differing Site Conditions regulation or otherwise. Whether one views the matter as involving several distinct "claims" or one "claim" covering distinct requests, the Corps had before it what are identifiably distinct requests for compensation for additional expenses incurred by CKY, with the additional expenses at least partially non-overlapping and different in amount. The Corps denied all of them. This is not a case, therefore, involving a single government action causing a single harm, where the only multiplicity is in the number of legal issues raised concerning the validity or the invalidity of that action.

On all but one of CKY's compensation requests, CKY was not able to establish that the Corps' denial was even wrong, let alone lacking in substantial justification. But one of the compensation requests denied was for expenses due to the undisclosed culverts, which ultimately the Board held the Corps could not properly deny and, indeed, had no substantial justification for denying, and CKY recovered $185,000 plus interest in such compensation. *See Fees Decision*, at 186,014–15. Thus, this is a case in which CKY was forced to launch an adjudication before the Board to recover that substantial amount unjustifiably denied, *see Jean*, 496 U.S. at 159 n.7 (reciting congressional aim in EAJA); *Patrick*, 668 F.3d at 1330, even while also including in the adjudication demands for other amounts that were properly denied. We leave to the Board the task of further consideration of how to exercise its discretion on remand given these two undisputed facts.

## III

The decision of the Board is vacated, and the case is remanded for proceedings consistent with this opinion.

The government shall bear its own costs.

**VACATED AND REMANDED**